IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| STEVEN SMITH, | ) | |
|            Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| AUGUSTA-RICHMOND COUNTY, | ) | |
|     GEORGIA; | ) | |
| | ) | |
|  RICHARD ROUNDTREE, individually | ) | |
|     and in his official capacity as | ) | |
|     Sheriff of Richmond County, | ) | |
|     Georgia; | ) | |
| | ) | |
| DEPUTY SMITH, whose first name is | ) | |
|     presently unknown to Plaintiff, | ) | |
|     individually and in his | ) | |
|     in his official capacity as a sworn | ) | **COMPLAINT** |
|     officer of the Richmond County | ) | |
|     Sheriff's Office; | ) | |
| | ) | |
| MAJOR KEVIN JONES, individually | ) | |
|     and in his official capacity as | ) | |
|     Commander of the Charlie Webster | ) | |
|     Detention Center operated by the | ) | |
|     Richmond County Sheriff's Office; | ) | |
| | ) | |
| LIEUTENANT DANNY WHITEHEAD, | ) | |
|     Individually and in his official | ) | |
|     capacity as a sworn officer of the | ) | |
|     Richmond County Sheriff's Office | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| JOHN DOE DEFENDANTS ONE | ) | |
|     THROUGH SIX, presently | ) | |
|     unidentified to Plaintiff, each of | ) | |
|     whom is sued individually and in | ) | |
|     his capacity as a sworn officer | ) | |
|     of the Richmond County Sheriff's | ) | |
|     Office, | ) | |
|             Defendants. | ) | |

1

<u>Summary of the Action</u>

1.      This is a civil action arising from a policy and pattern of harassment of Plaintiff, by DEFENDANT RICHARD ROUNDTREE, Sheriff of Richmond County, Georgia ("Sheriff Roundtree") and other officers of the Sheriff's Office of Richmond County, Georgia, with the intention and effect of denying to Plaintiff his rights under the Fourteenth Amendment to the Constitution of the United States, including but not limited to his right of free speech as guaranteed by the First Amendment to the Constitution of the United States, his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution, and his right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution, all as applicable against state and municipal officers and bodies pursuant to the Fourteenth Amendment to the United States Constitution.

2.      This course of harassment has also been carried out in violation of Georgia law.

3.      Plaintiff is a Christian, a resident of Augusta and a member of Cliffwood Presbyterian Church on Lumpkin Road, and is a duly licensed and accredited missionary with Reformed Evangelistic Fellowship.

4.      Plaintiff has protested against the practice of abortion, as described below, almost daily for a period of over six years, on the public right of way adjacent to an abortion facility located at 2903 Professional Parkway, Richmond County (the "Abortion Facility").

5.      During this time Plaintiff has always conducted his protests in accordance with all laws and constitutional standards.   Although variously threatened and charged, Plaintiff has never been convicted of any violation of law whatsoever in connection with these protests.

6.      During this time period, Sheriff Roundtree, as Sheriff of Richmond County, through his officers in the Sheriff's Office of Richmond County carrying out his policy, has

2

instituted, condoned, approved, supervised and engaged in an illegal and unconstitutional policy and pattern of harassment of Plaintiff with the purpose of eliminating any effective protest against the activities taking place at the Abortion Facility, as described below.

7.     This pattern has included numerous illegal and improper actions, amongst others:

(a) false arrest and false imprisonment of Plaintiff for a period of over seven hours, without probable cause and without any charge whatsoever, then or subsequently;

(b) baseless criminal citations and prosecutions initiated by the Sheriff's Office, but never carried through trial;

(c) numerous threats of arrest based on false advice and direction to Plaintiff as to the law; violation of the legal principles set down by this Court in a preliminary and permanent injunction binding against Sheriff Richard Roundtree and his officers in another matter, and possibly in violation of the actual letter of the injunction;

(d) the continuous threat of criminal prosecution under a new ordinance which is itself unconstitutional;

(e) and the issuance of citations to Plaintiff and others for violation of the new ordinance, for their *in terrorem* effect, with, upon information and belief, the knowledge that the prosecutors of Richmond County tasked with the enforcement of county ordinances will not prosecute under the New Ordinance (as later defined herein), thus avoiding subjecting the New Ordinance to constitutional scrutiny, among other actions and tactics.

8.     Defendants are sued for violations of Plaintiff's rights under the United States Constitution, Amendments One, Four, Five and Fourteen, and under the common and statutory law of Georgia.  This action is brought pursuant to 42 U.S.C. Section 1983 and under Georgia law.

9.     As described herein, Plaintiff seeks legal and equitable relief, including:

(a) a declaratory judgment that an Augusta-Richmond County ordinance, effective as of July 1, 2021 (the "New Ordinance") under which Plaintiff has most recently been threatened, is unconstitutional, both on its face and as applied, under the federal and state constitutions;

(b) a preliminary and permanent injunction against enforcement of the New Ordinance against persons protesting against the practice of abortion under the circumstances alleged below, and against the repetition of any of the tactics alleged below by which certain Defendants have carried out their scheme of harassment; and

(c) money damages for past deprivations of Plaintiff's federally guaranteed rights, together with attorneys' fees and expenses, and for false arrest and false imprisonment under Georgia law.

## Jurisdiction and Venue

10.    This Court has jurisdiction to hear the federal civil rights violations in this matter under 28 U.S.C. §§ 1331 and 28 U.S.C. Section 1343(a)(3)-(4) and supplemental jurisdiction to hear all claims arising under Georgia law pursuant to 28 U.S.C. § 1367.

11.    Venue is proper in this Court under 28 U.S.C. § 1391 because the acts giving rise to the claim stated herein occurred in Richmond County, Georgia and all Defendants other than Augusta-Richmond County, Georgia are, upon information and belief, citizens and residents of Richmond County, Georgia, within the Augusta Division of the Southern District of Georgia.

## Parties

12.    Plaintiff is a citizen and resident of Richmond County, Georgia.

13.    Defendant Augusta-Richmond County, Georgia ("Augusta-Richmond County") is a consolidated governmental entity authorized under the laws of the State of Georgia, which is

joined herein only because Plaintiff seeks a declaration that the New Ordinance enacted by Augusta-Richmond County is unconstitutional facially and as applied under circumstances described below, and an injunction prohibiting the enforcement of the New Ordinance under certain conditions.

14.     Defendant Richard Roundtree ("Sheriff Roundtree") is, upon information and belief, a citizen and resident of Richmond County, Georgia, and is and has been at all relevant times the Sheriff of Richmond County, Georgia, and as such under Georgia law is and was at all relevant times responsible for the training, operation, conduct and policy of the Sheriff's Office (the "RCSO") of Augusta-Richmond County, Georgia. At all relevant times Sheriff Roundtree acted under color of state law.  Sheriff Roundtree is sued in his official and individual capacities.

15.     Defendant Deputy Smith ("Deputy Smith"), whose full name is unknown to Plaintiff, is, upon information and belief, a deputy sheriff of Richmond County who falsely arrested Plaintiff on November 20, 2020, without any probable cause, and caused him to be falsely imprisoned at the Charlie Webster Detention Center without any charge being made against him (either then or subsequently) for a period of more than seven hours as alleged hereinbelow.

16.     Defendant Kevin Jones ("Major Jones") is, upon information and belief, a major in the RCSO and is now, according to the current RCSO website, the Commander of the Charlie Webster Detention Center.  Plaintiff has no means of learning whether Major Jones held this position at the time of Plaintiff's false arrest and false imprisonment.  Major Jones is included as a Defendant herein because the statute of limitations as to Plaintiff's claims based of false imprisonment, to the extent they are considered separately from the pattern of harassment alleged herein, may expire in the near future, for which reason Plaintiff must exercise the reasonable inference that Major Jones was similarly in charge of the Charlie Webster Detention Center in

November of 2020, when Plaintiff's false arrest and false imprisonment, without any charge whatsoever, took place.   If Plaintiff is informed that Major Jones was not in this position on November 20, 2020, or in any position with authority over Plaintiff's false imprisonment, Plaintiff will seek permission to drop Major Jones as a Defendant.   To the extent Major Jones is partly responsible for Plaintiff's false imprisonment, Major Jones is sued in his official and individual capacities.

17.     Defendant Lieutenant Danny Whitehead ("Lieutenant Whitehead") is a sworn officer of the Richmond County Sheriff's Office who deprived Plaintiff of his constitutional rights on September 18, 2020, as alleged below.

18.     Defendant John Doe Number One is the person who was in charge of the Charlie Webster Detention Center operated by the RCSO on November 20, 2020 and thus the person most directly responsible for holding Plaintiff without charge at the detention facility on that day for seven hours.   The identity of this person is unknown to Plaintiff and is solely within the knowledge of the RCSO.   Defendant John Doe Number One acted at all relevant times under color of state law and within the scope of his employment.   John Doe Number One is sued in his official and individual capacities.

19.     Defendants John Doe Numbers Two through Six are persons now unknown to Plaintiff and whose identities are solely within the knowledge of the Sheriff Roundtree and the RCSO, who have participated in the formation and carrying out of the policy of harassment of Plaintiff and others instituted and controlled by Sheriff Roundtree, by taking or directing actions to be taken against Plaintiff consistent with the policy of harassment as alleged hereinbelow. Because Plaintiff is necessarily ignorant of the internal operation of the RCSO, beyond such

information as is contained on the RCSO's website, Plaintiff is presently unable to specify the identity of these John Doe Defendants.

General Facts

20.     Plaintiff has for many years peacefully protested against the practice of abortion at a facility located at 2903 Professional Parkway in Richmond County, Georgia (the "Abortion Facility").  Plaintiff has always conducted his protests strictly in accordance with all relevant constitutional standards and laws and has never been found to be in violation of these standards and laws by any court at any time.  Plaintiff has always conducted his protests legally from public property, namely, the public right of way adjacent to the Abortion Facility.

21.     Despite the legal and  peaceful nature of Plaintiff's constitutionally protected protests, Sheriff Roundtree, Deputy Smith, Lieutenant Whitehead and John Does One through Six, together with other officers of the RCSO acting under the direction and pursuant to the policy of Sheriff Roundtree, have intentionally, maliciously, recklessly and lawlessly instituted and conducted a campaign of harassment against Plaintiff in violation of his rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States and the Constitution of the State of Georgia, and in violation of the laws of the State of Georgia,  including but not limited to the actions  more particularly alleged below.

22.     At various specific times beginning in May of 2016 and continuing through the present, the following tactics, among others, have been employed by Defendants and persons acting in accordance with the policy of harassment created, approved, implemented and sanctioned by Sheriff Roundtree, in pursuance of their illegal and unconstitutional scheme:

(a) Plaintiff has been falsely advised by law enforcement that he cannot stand on the public right of way to carry out his protests, and threatened with criminal charges for doing so;

7

(b) Plaintiff has been advised by law enforcement that he was standing on private property, and threatened with criminal charges for doing so, when in fact, as he has repeatedly demonstrated to the Richmond County Sheriff's Office, Plaintiff has always stood on the public right of way from which he is constitutionally entitled to carry out his protests;

(c) Separately from the above (a) and (b), Plaintiff has been falsely told by law enforcement that the public right of way is owned by private parties, such that Plaintiff was allegedly trespassing, and such officers have threatened Plaintiff with criminal charges;

(d) Plaintiff has been ordered by law enforcement to cease his constitutionally protected protests, under threat of arrest, and in one case has been deterred from continuing his protests for a period of time;

(e) Plaintiff has been falsely told by law enforcement that he cannot protest as he has been doing, without obtaining a permit from Augusta-Richmond County, and Plaintiff has been threatened with criminal charges for failing to do so;

(f) Plaintiff has been falsely told by law enforcement that he cannot use a plastic, nonamplified, direction cheer cone in the course of his protests and that he cannot use a sound amplifier during the course of his protests, even though this Court has recognized in an Order served on Sheriff Roundtree in another matter that persons in situations materially indistinguishable from those of Plaintiff herein are entitled to the use of such or similar devices;

(g) Plaintiff has been falsely told by law enforcement that he cannot temporarily place his protest signs on the public right of way by leaning them against a Georgia Power box located in the public right of way, and threatened with criminal charges for doing so, even though Defendants had and have received, upon information and belief, no complaint from the Georgia Power Company;

(h) Plaintiff has been falsely told by law enforcement that in the course of his protests he may not speak to anyone on or adjacent to the public right of way who has not first affirmatively invited such speech from Plaintiff, and has been threatened with criminal charges accordingly;

(i) Plaintiff has been falsely and maliciously charged with violation of former Augusta-Richmond County Code Ordinances § 3-6-2(c), which forced Plaintiff to employ an attorney, who was able to obtain the dismissal of the charge as alleged hereinbelow;

(j) Plaintiff has been illegally and unconstitutionally arrested and detained by Deputy Smith and the persons in charge of the Charlie Webster Detention Center, all under the direction and control of Sheriff Roundtree, in the Charlie Webster Detention Center operated by the RCSO for more than seven hours, without probable cause and without any charge whatsoever then or subsequently, for exercising his right of protest;

(k) Plaintiff has been told by one or more sworn officers of the RCSO, all under the supervision and control of Sheriff Roundtree, that:

(i) "you're not going to be doing this much longer";

(ii) Sheriff Roundtree "has told a Major" in the Sheriff's Department, who "has told a Lieutenant" in the Sheriff's Department, "who has told a Sergeant" in the Sheriff's Department that Plaintiff cannot use any type of sound amplifier, regardless of whether there is a constitutional ordinance prohibiting him from doing so;

(iii) Plaintiff has been told to "clean up because the Sheriff is the type of guy who will find something to charge him with";

(iv) then, immediately after having been told the above, was charged by three citations of violations of traffic regulations.

9

(v)  All of the foregoing (k)(i)-(iv) were told to Plaintiff by law enforcement with the purpose of deterring Plaintiff from exercising his constitutional right to protest;

(l)  officers of the RCSO have solicited complaints against Plaintiff from uncomplaining neighbors of the Abortion Facility, in an effort to stop Plaintiff from exercising his constitutional rights;

(m)  Sheriff Roundtree and others within the RCSO, in collusion with other persons, have obtained the adoption by the Augusta-Richmond County Commission, of certain portions of the New Ordinance[1] referenced above and described in greater detail below, which although unconstitutional on their face and as applied were adopted specifically to carry out Defendants' scheme of depriving Plaintiff of his constitutional right to protest and were adopted with an improper and unconstitutional motive; that is, in order to deter Plaintiff and others from exercising their constitutional rights.  As a part of the scheme to deter and prevent Plaintiff and others from exercising their constitutionally protected right to protest against abortion from the public right of way adjacent to the premises of the Abortion Facility, Sheriff Roundtree has, upon information and belief, instituted a policy of making arrests and bringing charges under this new ordinance,  but with the knowledge that the prosecuting authorities who are authorized to prosecute such charges will not do so, so that the matter of the constitutionality of the new ordinance will never come before a court unless this Court addresses the matter in this lawsuit;

(n) Plaintiff has been charged under the New Ordinance, but upon information and belief, the prosecution has been abandoned, or alternately, suspended indefinitely, so as to prevent the constitutionality of the New Ordinance from becoming the subject of court consideration;

---

[1] Written, in fact, by an attorney for the Sheriff's Department, as the County has admitted to the undersigned.

23.     The above actions and other similar actions too numerous to detail in a complaint, have all been carried out with the intention, and oftentimes the effect, of deterring Plaintiff from exercising his constitutional right to protest in front of the Abortion Facility. Some of the more serious incidents of harassment are detailed below, in order that the Court and Defendants will have a clear idea of the scope of the constitutional violations of which they are accused and to satisfy the requirement that the allegations of Plaintiff's Complaint describe particular actions taken in advancement of the campaign of harassment herein alleged.

24.      Plaintiff began his course of constitutionally protected protests on or about May 16 2016.

25.     On May 16, 2016, Plaintiff was falsely told, by a Lt. Compton of the RCSO, that the right of way from which he was protesting is a private road.  In fact, the road and right of way is owned in fee simple by Richmond County and is a public road and right of way.

26.     On May 25, 2016, Plaintiff was issued a citation by the RCSO which charged him with a purported violation of Augusta-Richmond County Ordinance § 3-6-2(c), the alleged offense being further described in the citation as "disorderly conduct/excess noise."  A true and correct and the cited county ordinance as then in force is attached hereto as Exhibit "A."

27.     In the "Summons Continuation" apparently attached to the citation, the unnamed deputy who issued the citation stated that Plaintiff was "in the roadway in front of the clinic on a non-electronic megaphone."  A true and correct copy of this "Summons Continuation" is attached hereto as Exhibit "B."

28.     Plaintiff entered a plea of not guilty on the charge described above.

29.     The case came on for a bench trial in the Civil Court of Richmond County on December 15, 2016.

30.     Plaintiff's counsel argued to the Court that Plaintiff had not violated § 3-6-2 (c), which by its own terms is expressly limited to the use of a "loudspeaker, sound amplifier or other machine or device for the producing or reproducing of sound which is cast upon the public streets *for the purpose of commercial advertising or attracting the attention of the public to any building or structure*" (emphasis supplied) and further that if the Ordinance Section were to be construed to reach Plaintiff's conduct in peacefully protesting on the public right of way, it would be unconstitutional.

31.     The prosecutor agreed to dismiss all charges against Plaintiff if Plaintiff would agree "that he will not bring any civil lawsuit against Augusta-Richmond County arising out of Charge No. 139716."

32.     Agreeing to this condition, Plaintiff joined in a joint motion to dismiss the criminal case, which was granted.

33.      Plaintiff entered into the agreement described above in the hope that he could thereby put an end to harassment and could carry on with his peaceful and constitutionally protected protests without the need for further legal proceedings, but this hope was destined to be frustrated by the illegal actions of Sheriff Roundtree and his agents as described below.

34.     On November 21, 2019, in an action bought by a different private citizen protesting on different public grounds at a different location within Richmond County, Sheriff Roundtree, his officers and servants and other persons in participation with them were preliminarily enjoined by this Court from enforcing the then-existing noise ordinances of Augusta-Richmond County, Georgia "so as to prohibit constitutionally protected amplified speech on the public sidewalks in consolidated Augusta-Richmond County."  A copy of this Injunction Order, which was made

permanent by this Court by a subsequent Order of February 21, 2020, is attached hereto as Exhibit "C."

35.     After a variety of incidents of harassment of Plaintiff, an officer of the RCSO informed Plaintiff on March 20, 2020 that he could not continue his protests from the public right of way adjacent to the Abortion Facility without a permit from Augusta-Richmond County, although this is false and should be known to be false by the RCSO.

36.     The deputy sheriff who made this false statement to Plaintiff told Plaintiff that he should apply for a permit to a "Mr. Morrison" with the County and provided a phone number.

37.     Plaintiff made a call to the number given and left a message for Mr. Morrison, but neither Mr. Morrison nor anyone else ever returned Plaintiff's call.

38.     On November 20, 2020, while Plaintiff peacefully and lawfully preaching and protesting from the public right of way adjacent to the Abortion Facility, Deputy Smith of the RCSO arrived at the Abortion Facility and entered it.

39.     Upon emerging from the Abortion Facility, Deputy Smith engaged Plaintiff and another protester.  Interrupting the conversation that Plaintiff was having with a young mother and her friend, Deputy Smith told Plaintiff to "get off the property" and "move."

40.     Plaintiff replied that he was not on the property of the Abortion Facility and attempted to show documentation of the location of the county plat line that showed this to be the case.  Deputy Smith refused to listen to Plaintiff and instead lunged at Plaintiff, arrested him and put handcuffs on him, with such force that his wrist was marked and his hand continued to be numb for a period of six months.

41.     Deputy Smith placed Plaintiff in a patrol car and carried him to the Charlie Webster Detention Center.  Deputy Smith never specified a charge against Plaintiff.

42.     Plaintiff was kept in the county detention center for seven hours, was locked in a cell, was never read any rights, and was deprived of any food and put in county jail clothes, even though he still had not been charged with any crime.

43.     At approximately 7:00 P.M. on the evening of November 20, Plaintiff was released without any charge ever having been made.  No charge has ever been made, because there is no ordinance or law which Plaintiff was violating and no basis for his prolonged arrest and detention.

44.     At the time of his release, Plaintiff was released after dark into the unguarded grounds surrounding the detention center, which is located in a remote and wooded section of Richmond County.

45.     On November 21, 2020, a Saturday, Deputy Smith returned to the location of the Abortion Facility for reasons unknown to Plaintiff.  Deputy Smith seemed to be surprised that Plaintiff had been released from detention.

46.     On July 1, 2021, the Augusta-Richmond County Commission repealed all sections of the county ordinance under which Plaintiff was previously charged, as described above, and replaced them with a new ordinance, denominated Ordinance Number 7782 and codified in the county code of ordinances as §§ 3-6-1 through 3-6-3 (the "New Ordinance").  A true and correct copy of the New Ordinance is attached hereto as Exhibit D.

47.     The New Ordinance is more detailed than the preceding ordinance, under which Plaintiff was previously charged, but it suffers from the same legal and constitutional infirmities, and more, than the ordinance it replaced.

48.     On September 18, 2021, Lieutenant Whitehead ordered Plaintiff to desist from his constitutionally protected protest being carried out from the public right of way adjacent to the premises of the Abortion Facility or be arrested then and there, whereupon Plaintiff under this

14

duress desisted from his protests for the remainder of the day (which he had been doing without any amplifier).

49.     On November 11, 2021 a sign installer posted a sign on the public right of way adjoining the Abortion Facility property, which designates the Abortion Facility property as a "health care facility" and refers to the New Ordinance.

50.     On information and belief, the Abortion Facility is the only location at which a sign such as that described above has been placed.

51.     On December 8, 2021, Deputy Dailey of the RCSO stopped in his RCSO vehicle behind Plaintiff on the public right of way adjoining the Abortion Facility.  He asked Plaintiff whether Plaintiff was aware of the New Ordinance.

52.     He read from the New Ordinance to Plaintiff and added that "this is the same code that you are familiar with, but they added 3-6-3 for health care [at which point Deputy Dailey laughed] facility zones.  You are free to read it."

53.     Deputy Dailey further told Plaintiff that he (Deputy Dailey) was there at the instigation of the occupier of adjacent property.  In response to a question from Plaintiff, Deputy Dailey said, however, that he (Deputy Dailey) has not witnessed a violation of law by Plaintiff.

54.     On April 13, 2022, while standing on the public right of way adjacent to the Abortion Facility's property, Plaintiff was threatened with a gun by a person unknown to Plaintiff, who thereafter left the Abortion Facility premises in a truck.

55.     Video review of this incident in which Plaintiff was physically threatened makes its alarming nature plain.

56.     Plaintiff reported this incident to the RCSO, hoping that the RCSO would make a case that would show persons of ill will that even a pro-life protester is entitled to law enforcement

protection against assaults committed by aiming a gun at him in broad daylight in Richmond County.

57.     After a considerable delay, an officer of the RCSO did arrive to investigate the incident.  He conferred with someone inside the Abortion Facility and then with Plaintiff.

58.     Plaintiff was summoned by the RCSO to appear at its office on April 18, ostensibly to give an account as a witness of the assault described above.  Plaintiff was accompanied at his appearance in response to this request by his counsel, who is lead counsel in this lawsuit.

59.     Plaintiff was interviewed in counsel's presence by Investigator Ken Rogers, an RCSO investigator. To Plaintiff's surprise, Investigator Rogers did not confine his inquiries to obtaining evidence concerning the assault on Plaintiff, but instead began the interview with hostile inquiries as to why Plaintiff would take it upon himself to protest abortion, suggesting that this activity was not in Plaintiff's best interest.

60.     After pushback from Plaintiff's counsel, who fortunately was present, Investigator Rogers was abruptly summoned from the interview room by an employee of the RCSO.  Upon his return, Investigator Rogers abandoned his attack on Plaintiff's motivations for protesting and instead concentrated on obtaining information concerning the assault.

61.     Investigator Rogers stated that the RCSO had apprehended the suspect,[2] that Plaintiff would be notified if the suspect were to be released, and that the suspect would be prosecuted for the assault.  However, the suspect was released without the promised notification to Plaintiff, and after numerous inquiries made by Plaintiff, Plaintiff was finally informed that a

---

[2] Plaintiff had supplied the tag number of the suspect's truck to the officers.

trial of the suspect before Judge Kellie McIntyre of the State Court of Richmond County[3] cannot be expected prior to the end of the year 2023.

62.     Plaintiff and his counsel, as well as a by-standing witness, have requested a copy of the video made of the witness interview conducted by the RCSO on April 18, 2022, but this request has been denied on the claim by the RCSO that the case is still a pending prosecution.

63.     The videotape of this will show, upon information and belief, the adversarial and inappropriate nature of the stance of the RCSO toward Plaintiff's constitutionally protected protests and by extension to Plaintiff's right to the protection of the RCSO against assaults with a deadly weapon.

64.     On June 28, 2022, Plaintiff was cited by the RCSO for purported violation of Section 3-6-3(b) of the New Ordinance.   A copy of this citation (the "New Ordinance Charge") is attached hereto as Exhibit E.  The citation shows that Plaintiff was to be arraigned in the Magistrate Court of Richmond County on July 28, 2022.

65.     Plaintiff made a written appearance on the New Ordinance Charge by counsel on June 30, 2022, also making a demand for jury trial and usual motions relevant to a criminal charge. As a result of his demand for a jury trial, the case has been transferred to the State Court of Richmond County, and no arraignment was held in the Magistrate Court.

66.     Plaintiff through counsel has attempted to obtain information as to when he will be arraigned in the State Court on the New Ordinance Charge.  Unacceptably, Plaintiff's counsel has been informed orally by a clerk in the State Court that Plaintiff will not be prosecuted on this claim, but that no written evidence will be furnished to the effect that Plaintiff will not be prosecuted.

---

[3] Apparently indicating to Plaintiff for the first time that the assault on Plaintiff would be treated as a misdemeanor only.

Plaintiff's counsel has made several attempts to obtain a more satisfactory explanation of the status of the New Ordinance Charge, but without any success.

67.   On information and belief, any pending prosecution of Plaintiff for violation of the New Ordinance has been abandoned or otherwise indefinitely delayed by the Solicitor of the State Court of Richmond County, with the direction, influence, and/or knowledge of Sheriff Roundtree, so as to prevent adjudication of the constitutionality of the New Ordinance.

68.   On information and belief, Sheriff Roundtree has adopted a policy of issuing citations for violation of the New Ordinance as an *in terrorem* measure, to deter Plaintiff and others from exercising their constitutional right to protest in front of the Abortion Facility, even though Sheriff Roundtree knows that the relevant prosecuting authorities, either at his request or knowing of his policy, and knowing further that the New Ordinance is unconstitutional, will refuse to prosecute the citations.  The intended effect of this policy is to deter protesters without exposing the New Ordinance to judicial scrutiny.

## COUNT ONE
Declaratory and Injunctive Relief
Against Sheriff Roundtree in his official capacity and Augusta-Richmond County

69.   Paragraphs 20-68 are incorporated herein by reference.

70.   The New Ordinance, attached hereto as Exhibit D, is unconstitutional in all of its sections (§§ 3-6-1, 3-6-2 and 3-6-3), both on its face and as applied against abortion protesters such as Plaintiff, violating the First and Fifth Amendments to the Constitution of the United States as made applicable to the various states of the Union and their political subdivisions by the Fourteenth Amendment to the United States Constitution.

71.   The New Ordinance prohibits amplified speech at a reasonable volume in a traditional public forum.

72.     The New Ordinance:

(a)     is vague and overbroad;

(b)     discriminates against speech because of its content;

(c)     restrains constitutionally-protected speech in advance of its expression without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

(d)     chills and deters the free speech of Plaintiff and third-party citizens;

(e)     lacks narrow tailoring;

(f)     fails to achieve any legitimate government purpose as applied to constitutionally protected speech;

(g)     fails to employ the least restrictive means to accomplish it supposed purpose; and

(h)     fails to leave open alternative avenues for expression.

73. Defendants have no compelling or legitimate reason that can justify enforcing the New Ordinance to ban amplified speech *per se*[4] in the traditional public forum of the public right of way adjacent to the Abortion Facility.

74.     The policies and practices of Defendants, as they pertain to banning amplified speech from the public right of way adjacent to the Abortion Facility, violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States and their political subdivision and municipal bodies through the Fourteenth Amendment to the United States Constitution.

---

[4] Perhaps notably, the amplifier used by Plaintiff is an unobtrusive handheld amplifier that measures merely 4.5 inches by 3.5 inches.

75.     Plaintiff has been directly and indirectly threatened with prosecution under the Section 3-6-3, which is captioned "Health Care Facility Zones,"[5] and indeed has been charged under said Section, although the prosecution has been abandoned as alleged below.

76.     As applied against the protests of Plaintiff conducted from the public right of way adjacent to the Abortion Facility, § 3-6-3 entirely prohibits any audible protests.  The public right of way adjacent to the property of the Abortion Facility is much less than one hundred feet wide. The entire depth of the property on which the Abortion Facility is located is approximately 142 feet, and the front door of the Abortion Facility itself is located within 100 feet of the public right of way.

77.     As written, the New Ordinance clearly prohibits *any* audible protest from the public right of way.  It also specifically provides that no such protests using an amplifier of any kind are prohibited.

78.     Further, upon information and belief, § 3-6-3 was passed with an unconstitutional purpose and effect and was directed specifically at Plaintiff's protest activity and the similar protest activities of others.

_____

[5] Section 3-6-3 of the New Ordinance, which is captioned "Health Care Facility Zones," creates a category of property known as a "health care facility zone" and provides in pertinent part  that "[n]o persons shall shout or cause to be produced . . . , by any means, any amplified sound . . . on any public street or sidewalk or from private property that is plainly audible at a distance of 100 feet of the property line of a property housing a health care facility . . . is confusingly worded, but it appears to prohibit either a "shout" or amplified speech which is "plainly audible"  to a person standing within 100 feet of the property line of certain types of health care facility. "Plainly audible" is further defined in § 3-6-1 of the New Ordinance as meaning "heard by the auditory senses of a person standing at a distance no less than the distances set forth below from the sound."

79.     Section 3-6-3(c) of the New Ordinance provides that "[i]t shall be the *duty* of each health care facility or owner of such establishment to erect and maintain . . . signs [informing the public of the existence of the "health care facility zone."

80.     Although the ordinance makes such posting a duty of health care premises owners or operators, upon information and belief, neither the RCSO or any other agency of Augusta-Richmond County has instructed such owners or operators to post their premises or inquired as to whether this requirement of the ordinance has been met.

81.     Upon information and belief, as earlier described, the Abortion Facility is the only "health care facility zone."

82.     Upon information and belief, § 3-6-3 of the New Ordinance was written by counsel specially employed by Sheriff Roundtree for the purpose of completely silencing Plaintiff and others similarly situated.

83.     The aforementioned abandonment and/or indefinite delay of prosecution of the charge against Plaintiff under § 3-6-3 without dismissal of the charges is, upon information and belief, in furtherance of Sheriff Roundtree's practice and policy of using charges under this Section as a tactic to intimidate and silence Plaintiff and others in Plaintiff's position from protesting in front of the Abortion Facility, while avoiding exposure of the New Ordinance to constitutional scrutiny.

84.     Plaintiff has a legitimate fear that, at any time, he could be prosecuted under § 3-6-3 of the New Ordinance, since Sheriff Roundtree could at any time abandon his *in terrorem* practice, determining in his discretion when he will or will not seek prosecution of such charges, including the charge that remains indefinitely pending against Plaintiff.

21

85.     Thus, even if it is the policy of the prosecuting authorities of Richmond County currently to avoid ever prosecuting charges brought under the New Ordinance, it is a grave infraction of Plaintiff's rights for such an ordinance to remain in force, in light of its threatened use against Plaintiff and his having been charged with its violation without any resolution of the charges against him.

86.     The first two sections of the New Ordinance are similarly unconstitutional.

(a)     Section 3-6-2 of the New Ordinance consists of several subsections prohibiting the  operation of "mechanical sound-making devices" throughout Richmond County during certain hours, to the extent that the sounds produced are "plainly audible at a distance of 300 feet or more from the place, building, structure or vehicle, or in the case of real property, beyond the property limits, in which it is located, whichever is farthest [sic]," and to prohibit "human-produced sounds"  which meet the same criterion of distance at which they are "plainly audible." This section is unconstitutional on its face and as applied to speech, whether or not aided by mechanical or electronic amplification, in that it invades the right of free speech guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

(b)     Section 3-6-1 of the New Ordinance does not appear to contain within itself a prohibition, but if is construed to do so, then this section is void as being unconstitutionally vague and overbroad under the First and Fifth Amendments to the Constitution of the United States, as made applicable against the States and their political subdivision and municipal corporations by the Fourteenth Amendment to the United States Constitution, and under Article I, Section 1, Paragraph V of the Constitution of the State of Georgia.

87.     On February 2, 2022, three persons who have no affiliation with Plaintiff (the "February 2022 Defendants") were charged by officers of the RCSO with violation of § 3(b) of the New Ordinance.

88.     On February 24, 2022, each of the February 2022 Defendants made an appearance through counsel (the same counsel as Plaintiff's counsel herein).  All three pleaded not guilty, demanded a jury trial and filed usual motions.  These cases were accordingly transferred to the State Court of Richmond County, where each was arraigned and again pleaded not guilty.

89.     No further proceedings have been had against the February 2022 Defendants.  Their counsel's attempts to learn the status of these criminal charges against his clients have, similarly to the Plaintiff herein, elicited the information from a clerk of the State Court that the February 2022 Defendants will not be prosecuted.  However, the State Court has again failed and refused to enter an order dismissing the claims.

90.     Given that the prosecution and State Court refuse to dismiss the charges against Plaintiff and others similarly situated, Plaintiff has a legitimate fear of, at any time, being prosecuted for the prior charge under or for subsequent alleged violations of the New Ordinance, which has a chilling effect on his exercise of his constitutional right to protest as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, such that under the circumstances as alleged herein, Plaintiff is entitled to a preliminary and permanent injunction against the enforcement of the New Ordinance.

91.     The New Ordinance is also in violation of Article I, Section 1,  Paragraph V of the Constitution of the State of Georgia, which states that '[n]o law shall be passed to curtail or restrain the freedom of speech," when analyzed for the same deficiencies stated above, but under the

standards which Georgia courts would follow in determining its conformity or lack thereof to this section of the Constitution of the State of Georgia.

92.    Although Plaintiff has not been threatened directly with prosecution under §§ 3-6-1 or 3-6-2 of the New Ordinance, he has a legitimate fear that, if Defendants are told by this Court that they cannot prosecute him under § 3-6-3, upon information and belief, Plaintiff has a reasonable apprehension that they will attempt to do so under §§ 3-6-1 or 3-6-2.

93.    Sections 3-6-1 and 3-6-2, if construed to reach conduct such as Plaintiff's, are also unconstitutional facially and as applied.

## COUNT TWO

Money Damages Under 42 U.S.C. § 1983 for Violation of Federally Guaranteed Civil Rights
Against all Defendants but Augusta-Richmond County, in their official and individual capacities

94.    Paragraphs 20 through 93 are incorporated herein by reference.

95.    The false arrest and false imprisonment of Plaintiff as described above, and the forcing of Plaintiff to discontinue his protest activities constitute the deprivation of liberty of Plaintiff without due process of law but under color of law, in violation of 42 U.S.C. § 1983.

96.    As to the illegal false arrest and imprisonment of Plaintiff, as alleged above, Plaintiff is entitled to compensatory and punitive damages against Sheriff Roundtree, Deputy Smith, Major Jones or such other person as shall be shown to have kept Plaintiff falsely imprisoned, and such other of Defendant John Does as shall be shown to have participated with Sheriff Roundtree in the formulation, maintenance and carrying out of the policy of harassment above described, in such amounts as the evidence shall show and as to punitive damages as the circumstances may demand, such amounts as a jury in its enlightened conscience may award.

97.    As to the totality of the incidences alleged above, wherein Plaintiff has been ultimately required to desist from his constitutionally protected protesting activity, under threat of

immediate arrest, Plaintiff is entitled to at least nominal, but also general and punitive damages, against Sheriff Roundtree, Lieutenant Whitehead and such other of Defendant John Does as shall be shown to have participated with Sheriff Roundtree in the formulation, maintenance, and carrying out of the policy of harassment, in such amounts as the evidence may show and the circumstances demand.

98.     If Plaintiff was not the subject of a direct and intentional policy of harassment, then Sheriff Roundtree failed to properly supervise or train his inferior officers as to the enforcement of the old ordinance as well as the New Ordinance, and such failure was the direct and proximate cause of violations of Plaintiff's constitutionally-protected rights under the First, Fourth, Fifth, and Fourteenth Amendments.

99.     Therefore, as to the totality of the incidences alleged above, in the alternative, wherein Plaintiff has been ultimately required to desist from his constitutionally protected protesting activity, under threat of immediate arrest, Plaintiff is entitled to at least nominal, but also general and punitive damages, against Sheriff Roundtree in his official capacity for failure to properly train and/or supervise his inferior officers as to enforcement of the New Ordinance, despite Sheriff Roundtree knowing that special training or supervision as to enforcement of the New Ordinance was necessary, which evidences a deliberate indifference to the constitutional rights of those persons whom the law enforcement officers of Augusta-Richmond County are likely to come into contact.

## **COUNT THREE**
Attorneys' Fees and Expenses of Litigation Under 42 U.S.C. § 1988
Against all Defendants

100.     Because Plaintiff is entitled to judgment as prayed for under Counts One and Two above, Plaintiff is entitled to attorneys' fees and expenses of litigation pursuant to 42 U.S.C. Section 1988.

## COUNT FOUR

False Arrest and False Imprisonment under Georgia Law
Against all Defendants but Augusta-Richmond County, in their official and individual capacities

101.     The allegations of Paragraphs 38-45 above are incorporated herein by reference.

102.     The illegal and unconstitutional arrest and detention of Plaintiff on November 20, 2020, as alleged above, for a period in excess of seven hours, without any charge whatsoever, constitutes wrongful arrest and wrongful imprisonment under the laws of the State of Georgia.

103.     Deputy Smith is liable for Plaintiff's false arrest.

104.     Deputy Smith, Major Jones and John Doe Number One are liable for Plaintiff's false imprisonment.

105.     Sheriff Roundtree and Defendant John Does Two through Six are liable for Plaintiff's false imprisonment, in that Plaintiff's false arrest and false imprisonment was a foreseeable and intended result of the policy of harassment against Plaintiff instituted, approved and directed by said Defendants together with and under the supervision of Sheriff Roundtree.

106.     Under Georgia law, Defendants named or described above are jointly and severally liable to Plaintiff for such general or compensatory damages as may be proved at trial.

107.     The actions of Defendants other than Augusta-Richmond County in falsely arresting and falsely imprisoning Plaintiff, and in creating, maintaining, approving and carrying out a policy of harassment against Plaintiff, show willful misconduct, malice, wantonness, oppression or that entire want of care which would raise a presumption of conscious indifference

to consequences, such that Defendants are jointly and severally liable to Plaintiff for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## STATE LAW ATTORNEY'S FEES

108.    The actions of Defendants other than Augusta-Richmond County in falsely arresting and falsely imprisoning Plaintiff, and in creating, maintaining, approving and carrying out a policy of harassment against Plaintiff constitute acting in bad faith, and Defendants have also been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense, such that said Defendants are liable to Plaintiff for Plaintiff's expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## *ANTE LITEM* NOTICE

109.    Plaintiff gave *ante litem* notice of this claim to Sheriff Richard Roundtree to the Richmond County Sheriff's Department and to the Augusta-Richmond County Commission, pursuant to O.C.G.A. § 36-11-1, to the extent that a requirement of such notice exists as to such persons and entities, by letter hand delivered to such persons and entities on November 17, 2021, and mailed to the same on the same day.

110.    Sheriff Roundtree subsequently responded through counsel and denied the claim. No one else responded to the notice.

WHEREFORE, Plaintiff prays as follows:

1.    that after notice and hearing this Court issue a preliminary and permanent injunction, restraining and enjoining Defendants and all persons acting in concert with Defendants from doing the following:

(a) attempting to enforce the New Ordinance against Plaintiff or other similarly situated persons where the conduct complained of consists of protests against the practice of abortion

conducted from the public right of way adjoining the Abortion Facility as described in the complaint, or from any private property which such persons have permission from its owner to use for such purpose; and

(b) employing any of the other tactics described in above against Plaintiff or other persons protesting against the practice of abortion.

2.      that the Court enter a declaratory judgment finding and holding that the New Ordinance is unconstitutional on its face and as applied to persons protesting against abortion from the public right of way adjoining or near the Abortion Facility as identified in the complaint, or from any private property on which such persons have permission to use for the purpose of such a protest;

3.      for an award of compensatory and punitive damages against all Defendants other than Augusta-Richmond County, together with reasonable attorneys' fees and expenses, on Counts One and Two;

4.      for an award of attorneys' fees and expenses of litigation pursuant to Plaintiff's Count Three;

5.      for an award of Plaintiff's reasonable attorneys' fees and expenses of litigation as a part of damages on Plaintiff's Count Four above; and

6.      for such other and further relief as may appear just and proper to the learned conscience of the Court.

TURNER PADGET GRAHAM & LANEY, P.A.

/s/ Charles C. Stebbins, III
Charles C. Stebbins, III
Georgia Bar No.: 677350
Robert P. Mangum
Georgia Bar No.: 268222

PO Box 1495
Augusta, GA. 30903
(706) 722-7543
cstebbinsiii@turnerpadget.com
rmangum@turnerpadget.com
*Attorneys for Plaintiff*