Blumberg No. 5119

PLAINTIFF'S
EXHIBIT

A

DDS-32 (01/10)

# GEORGIA
## UNIFORM TRAFFIC CITATION, SUMMONS AND ACCUSATION
### SS NR-GA1210000

139716

Court Case Number            NCIC Number            Citation Number

## RICHMOND COUNTY SHERIFF'S OFFICE
### AUGUSTA, GEORGIA 30901

**SECTION I - VIOLATOR**

Upon _____ May _____ 25 _____ (Year) _____ at 1035 ☐ A.M. ☐ P.M.
Month        (Day)

Operator License No. _____

License Class or Type ___ C ___ State ___ GA ___ Endorsements _____ Expires 2023

Name ___ Smith ___ Steven Christian ___
        (Last)      (First)      (Middle)

Address _____ 2024

City ___ Augusta ___ State ___ GA ___ Zip Code _____

DOB _____ Hair ___ Hgt ___ Wgt ___ Sex M Race ___ Eyes ___

Veh. Yr ____ Make _____ Style _____ Color _____

Registration No. _____ Yr _____ State _____

CDL ☐ YES ☐ NO   ACCIDENT ☐ YES ☐ NO   INJURIES ☐ YES ☐ NO   FATALITIES ☐ YES ☐ NO

☐ 2-LANE ROAD      ☐ DRIVER REQUESTED ACCURACY CHECK  ☐ VASCAR ☐ LASER ☐ RADAR
Within the State of Georgia, did commit the following offense: SPEEDING-Clocked by  ☐ PATROL VEHICLE ☐ OTHER
(Serial # _____ Calibration/Check _____ ) at _____ MPH in a _____ zone

☐ DUI (Test Administered:  ☐ BLOOD  ☐ BREATH  ☐ URINE  ☐ OTHER) DUI Test Results _____

**SECTION II VIOLATION**

TEST ADMINISTERED BY (If Applicable) _____

OFFENSE (Other than above) _____

In Violation of Code Section _____ of ☐ State Law ☐ Local Ordinance

REMARKS _____

PHONE _____

POE _____ RELEASED TO _____

PAY ONLINE AT WWW.AUGUSTAGA.GOV

**SECTION III LOCATION**

| WEATHER | (A) ROAD | (B) | TRAFFIC | LIGHTING | COMMERCIAL VIOLATION INFORMATION |
|---|---|---|---|---|---|
| ☐ Clear | ☐ Dry | ☐ Concrete | ☐ Light | ☐ Daylight | ☐ 16+ Passengers |
| ☐ Cloudy | ☐ Wet | ☐ Blacktop | ☐ Medium | ☐ Darkness | ☐ Commercial Vehicle Violation |
| ☐ Raining | ☐ Ice | ☐ Dirt | ☐ Heavy | ☐ Other | ☐ Hazardous Material Violation |
| ☐ Other | ☐ Other | ☐ Other | | | |

County of ___ RICHMOND ___ and _____ miles _____ of (city) _____

on _____ at or near _____

ation (secondary location) _____ mile post _____ or within (city) _____

OFFICER _____

(Print) _____ Badge # _____ Div. _____

You are hereby ordered to appear in Court to answer this charge on the _____ day of _____

20 ___ at _____ ☐ AM ☐ PM in the STATE _____ MAGISTRATE _____ Court

at _____

City _____ AUGUSTA _____ Georgia 30901

**SECTION IV SUMMONS**

NOTICE: This citation shall constitute official notice to you that failure to appear in Court at the date and time stated on this citation to dispose of the cited charges against you shall cause the designated Court to forward your driver's license number to the Department of Driver Services, and your driver's license shall be suspended. (Georgia Code 17-6-11 and 40-5-56) The suspension shall remain in effect until such time as there is a satisfactory disposition in this matter or the Court notifies the Department of Driver Services.

LICENSE DISPLAYED IN LIEU OF BAIL ☐ YES ☐ NO  RELEASED TO _____
SIGNATURE ACKNOWLEDGES SERVICE OF THIS SUMMONS AND RECEIPT OF COPY OF SAME

SIGNATURE _____

139716

## Chapter 6

## NOISE

### Sec. 3-6-1. Regulated.

It shall be unlawful for any person to make, continue or cause to be made or continued or permit to be made, continued or caused any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County.

### Sec. 3-6-2. Prohibited noises enumerated.

The following acts are declared to be loud, disturbing and unnecessary noises in violation of this chapter, but this enumeration shall not be deemed to be exclusive:

(a) *Horns, signaling devices.* The sounding of any horn or signaling device on any automobile, motorcycle or other vehicle on any street or public place in Augusta-Richmond County except as a danger warning; the creation of any unreasonable loud or harsh sound by means of any signaling device and the sounding of any device for any unnecessary and unreasonable period of time; the use of any signaling device except one operated by hand or electricity; the use of any horn, whistle or other device operated by engine exhaust and the use of any signaling device when traffic is for any reason held up.

(b) *Radios, phonographs, similar devices.* The using, operating or permitting to be played, used or operated of any radio receiving set, musical instrument, phonograph or other machine or device for the producing or reproducing of sound in a manner as to disturb the comfort, health, peace or safety of reasonable neighboring inhabitants of ordinary sensibilities. The operation of any set, instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in manner as to be plainly audible at a distance of fifty (50) feet from the building, structure or vehi-

cle in which it is located shall be a prima facie evidence of a violation of this section. (**Ref.:** *Richmond County, Georgia vs. Cecil Herbert Barnes.*

(c) *Loudspeakers, amplifiers for advertising.* The using, operating or permitting to be played, used or operated, of any radio receiving set, musical instrument, phonograph, loudspeaker, sound amplifier or other machine or device for the producing or reproducing of sound which is cast upon the public streets for the purpose of commercial advertising or attracting the attention of the public to any building or structure. Announcements over loudspeakers can only be made by the announcer in person and without the aid of any mechanical device.

(d) *Yelling, shouting, etc.* Yelling, shouting, hooting, whistling or singing on the public streets, particularly between the hours of 11:00 p.m. and 7:00 a.m. or at any time or place so as to annoy or disturb the quiet, comfort or repose of persons in any office, dwelling, hotel or other type of residence, or of any persons in the vicinity.

(e) *Animals, birds.* The keeping of any animal or bird which, by causing frequent or long-continued noise, shall disturb the comfort or repose of any persons in the vicinity.

(f) *Steam whistles.* The blowing of any steam whistle attached to any stationary boiler except to give notice of the time to begin or stop work or as a warning of fire or danger or upon request of proper county authorities.

(g) *Exhausts.* The discharge into the open air of the exhaust of any steam engine, stationary internal-combustion engine or motorboat except through a muffler or other device which will effectively prevent loud or explosive noises therefrom.

(h) *Defect in vehicle or load.* The use of any automobile, motorcycle or vehicle so out of

repair, so loaded or in a manner as to create loud and unnecessary grating, grinding, rattling or other noise.

(i) *Loading, unloading, opening boxes.* The creation of a loud and excessive noise in connection with loading or unloading any vehicle or the opening and destruction of bales, boxes, crates and containers.

(j) *Construction or repair of buildings.* The erection (including excavation), demolition, alteration or repair of any building, as well as the operation of any pile driver, steam shovel, pneumatic hammer, derrick, steam or electric hoist, or any other similar equipment attended by loud or unusual noise, other than between the hours of 7:00 a.m. and 10:00 p.m. on weekdays; however, the inspections and permits department shall have the authority, upon determining that the loss or inconvenience which would result to any party in interest would be extraordinary and of such nature as to warrant special consideration, to grant a permit for a period not to exceed ten (10) days within which time such work and operation may take place within the hours of 10:00 p.m. to 7:00 a.m.

(k) *Schools, courts, places of worship, hospitals.* The creation of any excessive noise on any street adjacent to any school, institution of learning, place of worship or court while in use, or adjacent to any hospital which unreasonably interferes with the normal operation of that institution, or which disturbs or unduly annoys patients in the hospital, provided that conspicuous signs are displayed in those streets indicating a school, hospital or court street.

(l) *Hawkers, peddlers, vendors.* The shouting and crying of peddlers, hawkers and vendors which disturb the peace and quiet of the neighborhood.

(m) *Noise to attract attention.* The use of any drum or other instrument or device for

the purpose of attracting attention by creation of noise to any performance, show or sale.

(n) *Transportation of metal rails or similar materials.* The transportation of rails, pillars or columns of iron, steel or other material over and along streets and other public places so as to cause loud noises or as to disturb the peace and quiet of those streets or other public places.

(o) *Blowers.* The operation of any noise-creating blower or power fan or any internal-combustion engine, the operation of which causes noise due to the explosion of operating gases or fluids, unless the noise from the blower or fan is muffled and the engine is equipped with a muffler device sufficient to deaden the noise.

(p) *Sound trucks.* The use of mechanical loudspeakers or amplifiers on trucks or other moving or standing vehicles for advertising or other commercial purposes. The use of sound trucks for noncommercial purposes during hours and in places and with volume as would constitute this use as a public nuisance; provided, that the provisions of this section shall not apply to or be enforced against:

(1) Any vehicle of Augusta-Richmond County while engaged in necessary public business;

(2) Excavations or repairs of streets by or on behalf of Augusta-Richmond County or the state at night when the public welfare and convenience renders it impossible to perform such work during the day; or

(3) The reasonable use of amplifiers or loudspeakers in the course of public addresses which are noncommercial in character.

(Ord. No. 6625, § 1, 7-15-03)

### Sec. 3-6-3. Hospital zones.

There shall be within Augusta-Richmond County what shall be known as hospital zones around such hospitals or sanitoriums as may be in exist-

ence or that may be established. Within these zones, no unnecessary noises of any kind shall be allowed. These zones shall extend two hundred fifty (250) yards in every direction from any such hospital or sanitorium. The approaches to said zones shall have necessary signs in such localities as to enable everyone to see them. Persons violating this section shall be punished as provided in section 1-6-1 of this Code.

## Sec. 3-6-4. Penalty for violation of chapter.

Any person or persons failing to comply with the lawful provisions of this chapter or any act prohibited by this chapter or failing to do any act mandated by this chapter shall be guilty of an offense, and upon trial as a misdemeanor and conviction, shall be punished by a fine in an amount not to exceed one thousand dollars ($1,000.00) and/or imprisonment in the county jail for a period not to exceed sixty (60) days.



# Summons Continuation

**Case Number:** 16-218564

**Reference:** EXCESSIVE NOISE/ CTY ORD/ 3-6-2(C)

**Location:** 2903 PROFESSIONAL PKWY/ PREFERRED WOMENS HEALTH

**Offender (s):** SMITH, Steven C. w/m, Ga Oln# 060022743, 100272, 1616 Whitney St, Augusta Ga 30904

**Witnesses:** Kenneth Daniels Attorney Office, 2907 Professional Pkwy, 706-860-3746
Raymond James/ Fehrman Investment Group, 2908 Professional Pkwy, 706-922-3590
Leanne Garcia, Elite Laboratories, 2904B Professional Pkwy, 706-228-5221
Scott Leggio DMD, 2904 Professional Pkwy, 706-860-0650

**Details:** On Wednesday 052516 at 1030 hrs, I was dispatched to 2904 Professional Pkwy in reference
to a disturbance in front of the business. The disturbance is involving protesters in front of the
Preferred Womens Health Clinic.
The complainant was about the listed offender/ Steven Smith, he was in the roadway in front
of the clinic on a non-electronic megaphone. The complaint from the listed businesses was
that he was being loud, it was disrupting their day to day business and possibly future clients.
Smith was warned of the same type incident on 051716, 16-206861.
Smith was issued a citation # 139717 for Excessive Noise 3-6-2(c) with the Magistrate Court
date of 062816 at 0900 hrs.

**Reviewed By:**   Cpl. Patrick Blanchard C30

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2019 NOV 21  AM 11: 58

CLERK _M. akin_
SO. DIST. OF GA.

```
ERIC JOSEPH LOVE,                     *
                                      *
        Plaintiff,                    *
                                      *
        v.                            *          CV 119-120
                                      *
AUGUSTA-RICHMOND COUNTY,              *
GEORGIA; SHERIFF RICHARD              *
ROUNDTREE, In His Official            *
Capacity as Sheriff with             *
Richmond County Sheriff's            *
Office; JEFF JOHNSON,                 *
Individually and In His              *
Official Capacity as Deputy          *
with Richmond County Sheriff's       *
Office,                               *
                                      *
        Defendants.                   *
```

------

O R D E R

------

Before the Court is Plaintiff's motion for a preliminary
injunction.  (Doc. 9.)  For the reasons contained herein,
Plaintiff's motion is **GRANTED**.

I. BACKGROUND

Plaintiff is a Christian man who shares his religious beliefs
in public places.  (Compl., Doc. 1, ¶ 11.)  His self-proclaimed
goal is to speak in a conversational tone for passersby to hear
within a range of twenty-five to fifty feet.  (Id. ¶¶ 16, 17.)  To



PLAINTIFF'S
EXHIBIT
C
Blumberg No. 5113

achieve his mission, Plaintiff employs a hand-held amplification device.  (Id. ¶ 21.)

## A. 2018 Augusta Pride Festival

The Augusta Pride Festival (the "Festival") is an annual event held in Augusta, Georgia.  (Id. ¶ 22.)   In 2018, the Festival occurred on June 23.  (Id.)  The Festival has a parade component, which concludes at the Augusta Common, a public park in downtown Augusta.  (Id. ¶ 27; Parade Route, Doc. 9-3.)  In the afternoon on the day of the 2018 Festival, Plaintiff stood on the public sidewalk outside of Psychotronic Records, an Augusta business. (Compl., ¶¶ 29, 31.)  Psychotronic Records is on the block of Broad Street bordered by James Brown Boulevard to the west and the Augusta Common to the east.  (Id. ¶ 23; Map, Doc. 9-2.)  There, Plaintiff delivered his message with the assistance of his amplification device.  (Compl., ¶¶ 31-36.)

Plaintiff spoke for a brief period before a law enforcement officer informed Plaintiff that he must cease using his amplification device.  (Id. ¶¶ 39-40.)  Shortly thereafter, two officers arrested Plaintiff and charged him with disorderly conduct pursuant to Augusta-Richmond County Code ("A.R.C.C.") Sec. 3-7-1(r).  (Id. ¶¶ 44-49.)

## B. 2019 Augusta Pride Festival

Despite the arrest in 2018, Plaintiff desired to return to Augusta during the 2019 Festival to share his message using his

amplification device. (Id. ¶ 52.) Prior to doing so, Plaintiff

contacted Defendants to ensure his speaking would be permitted.

(Id. ¶¶ 52-53.) Defendants refused Plaintiff's request citing

A.R.C.C. Secs. 3-7-1(r) and 3-6-2(c). (Id. ¶¶ 54-55.) According

to Defendants, the ordinances are applied conjunctively to ban

Plaintiff's amplified speech. (Id. ¶¶ 55-56; June 10, 2019 Letter,

Doc. 9-8, at 1-3.)

**C. The A.R.C.C. Ordinances**

> Under A.R.C.C. Sec. 3-7-1:
>
> Any person who shall do or engage in any of the following
> in Augusta-Richmond County shall be guilty of disorderly
> conduct: . . . (r) Any person loitering or prowling
> within Augusta-Richmond County generally. For purposes
> of this subsection, loitering or prowling means being in
> a place at a time or in a manner not usual for law-
> abiding individuals under circumstances that warrant a
> justifiable and reasonable alarm or immediate concern
> for the safety of persons or property in the vicinity.

Defendants argue that because Augusta-Richmond County prohibits

the use of amplification in certain situations, such as in A.R.C.C.

Sec. 3-6-2, using amplification to speak is not usual for law-

abiding individuals thereby violating the loitering ordinance.

(June 10, 2019 Letter, at 1, 2.) A.R.C.C. Sec. 3-6-2(c) bans:

> The using, operating or permitting to be played, used or
> operated, of any radio receiving set, musical
> instrument, phonograph, loudspeaker, sound amplifier or
> other machine or device for the producing or reproducing
> of sound which is cast upon the public streets for the
> purpose of commercial advertising or attracting the
> attention of the public to any building or structure.
> Announcements over loudspeakers can only be made by the

announcer in person and without the aid of any mechanical device.

Based upon Defendants' reaction to Plaintiff's request to speak with the assistance of amplification, Plaintiff chose not to attend the 2019 Festival. (See Compl., ¶ 62.) Plaintiff then filed the instant action and sought the preliminary injunction at issue believing Defendants are chilling his First Amendment rights. (See generally id.; Mot. for Prelim. Inj., Doc. 9.)

## II. LEGAL STANDARD

Plaintiff moves the Court for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). A preliminary injunction may issue when the moving party shows:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest.

BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 968 (11th Cir. 2005). In the Eleventh Circuit, "'a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion" ' as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535,

4

1537 (11th Cir. 1989)). The decision to grant or deny a preliminary injunction is within the district court's discretion. <u>Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.</u>, 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam).

## III. DISCUSSION

The Court examines whether Plaintiff has met his burden as to the four requirements.

### A. Substantial Likelihood of Success

Generally, the first requirement to establish a substantial likelihood of success on the merits is "considered the most important." <u>Georgia ex rel. Ga. Vocational Rehab. Agency v. United States ex rel. Shanahan</u>, 398 F. Supp. 3d 1330, 2019 WL 2320878, at *12 (S.D. Ga. 2019) (quoting <u>White v. Alcon Film Fund, LLC</u>, 955 F. Supp. 2d 1381, 1383 (N.D. Ga. 2013)). To establish the first requirement, the movant most show he is likely to prevail on the merits. <u>Shatel Corp. v. Mao Ta Lumber & Yacht Corp.</u>, 697 F.2d 1352, 1355 n.2 (11th Cir. 1983). A movant is not required to show a substantial certainty of success. <u>Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.</u>, 557 F.3d 1177, 1232 (11th Cir. 2009) (Wilson, J., dissenting). The Parties do not dispute that the First Amendment protects free speech and that a sidewalk

is a traditional public forum.[1]  Accepting this, the Court turns to whether Plaintiff meets his burden to show a substantial likelihood of success on the merits as to his claim that Defendants are violating his constitutional rights.

The Court begins with Plaintiff's argument that the two local ordinances at issue, as applied conjunctively, unconstitutionally infringe upon his First Amendment rights.

> [I]n a public forum[,] the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citation and internal quotation marks omitted).  It is further undisputed that Augusta-Richmond County's restrictions at issue are content-neutral.  Therefore, Plaintiff argues that Defendants' ban of all amplified speech is not narrowly tailored and fails to leave reasonable alternatives for speech.  (Br. Supp. Mot. for Prelim. Inj., Doc. 9-10, at 10—13.)  Defendants respond that the statutory scheme is narrowly tailored to achieve its desire to protect Augusta-Richmond County citizens from loud noises.  (Resp. to Mot. for Prelim. Inj., Doc. 14, at 4—8.)

---

[1] The First Amendment is made applicable to state and local governments pursuant to the Fourteenth Amendment.  McKinley v. Kaplan, 262 F.3d 1146, 1147 n.1 (11th Cir. 2001).

Defendants urge the Court to consider the statutory scheme as a whole and not the ordinances in isolation. (Resp. to Mot. for Prelim. Inj., at 5.) The Court agrees that analyzing the statutory scheme is the proper procedure for determining the target of relevant ordinances. See Pine v. City of West Palm Beach, 762 F.3d 1262, 1270 (11th Cir. 2014) (citing Abramski v. United States, 573 U.S. 169, 179 n.6 (2014)). In doing so, the Court first highlights that it expresses no opinion regarding the facial constitutionality of the ordinances in question at this time.

The collection of Augusta-Richmond County ordinances involves Secs. 3-7-1(r) prohibiting loitering; 3-6-1 regulating noises[2]; and 3-6-2 enumerating the specific types of noises prohibited. None of the ordinances individually expressly prohibit amplified speech other than "for the purpose of commercial advertising or attracting the attention of the public to any building or structure" and loudspeakers or amplifiers on vehicles. Secs. 3-6-2(c), (p). Defendants argue that, in considering the ordinances together, Augusta Richmond-County has a legitimate interest in protecting its citizens from loud noises. (Resp. to Mot. for Prelim. Inj., at 5.) Plaintiff does not dispute — and the Court agrees — that protecting citizens from loud noises is a legitimate

---

[2] "It shall be unlawful for any person to make, continue or cause to be made or continued or permit to be made, continued or caused any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County." A.R.C.C. Sec. 3-6-1.

government interest. Pine, 762 F.3d at 1269 ("The government 'has

a substantial interest in protecting its citizens from unwelcome

noise.'") (quoting Ward, 491 U.S. at 796). "While this interest

is . . . greatest when it concerns 'the well-being, tranquility,

and privacy of the home, the government may act to protect even

such traditional public forums as city streets and parks from

excessive noise.'" Id. (citation and some internal quotation marks

omitted) (quoting Ward, 491 U.S. at 796). Therefore, Defendants

have the constitutional authority to narrowly tailor regulation of

loud noises on public sidewalks, such as the one where Plaintiff

spoke on the day of his arrest, through time, place, and manner

restrictions.

> To be valid, a time, place, or manner restriction
> also must be narrowly tailored to advance the
> government's substantial interest. "For a content-
> neutral time, place, or manner regulation to be narrowly
> tailored, it must not burden substantially more speech
> than is necessary to further the government's legitimate
> interests. . . . Such a regulation, unlike a content-
> based restriction of speech, need not be the least
> restrictive or least intrusive means of serving the
> government's interests. . . . But the government still
> may not regulate expression in such a manner that a
> substantial portion of the burden on speech does not
> serve to advance its goals."

Id. at 1269-70 (internal citations and some quotation marks

omitted) (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)).

Defendants' position is that Augusta-Richmond County's ordinances

are narrowly tailored to curb loud noises. As to the ordinances

individually that may be true, but as applied conjunctively, the

ordinances prevent Plaintiff's speech with the assistance of any
amplification in public fora.   The conjunctive enforcement raises
constitutional issues.

Defendants argue that "Augusta does not target all
amplification; it only targets loud noise."   (Resp. to Mot. for
Prelim. Inj., at 5.)   From Defendants' perspective, however, this
argument appears to be a distinction without a difference.
Plaintiff requests the present injunction because Defendants could
not assure Plaintiff that he would be free from arrest if he
employed any amplified speech in Augusta during the 2019 Festival.
(May 31, 2019 Letter, Doc. 9-7, at 4—5; June 10, 2019 Letter, at
3.)   Plaintiff's affidavit in support of his motion for preliminary
injunction evidences that with amplification, he intends to
maintain a reasonable volume.   (See Love Aff., Doc. 9-1, ¶ 23.)
Neither Defendants' opposition to the present motion, Defendants'
letter in response to Plaintiff's demand that he be permitted to
speak with amplification assistance, nor Augusta-Richmond County's
ordinances indicate any distinction between amplified speech that
is not a loud noise versus amplified speech that is.   Accordingly,
nothing suggests amplified speech is permitted at certain times,
in certain places, or in certain manners indicating a complete bar
to amplified speech.

As was the case in 1948, "[l]oud-speakers are today
indispensable instruments of effective public speech."   Saia v.

New York, 334 U.S. 558, 561 (1948). "Absolute prohibition within

municipal limits of all sound amplification, even though

reasonably regulated in place, time and volume, is undesirable and

probably unconstitutional as an unreasonable interference with

normal activities." Kovacs v. Cooper, 336 U.S. 77, 81 (1949).

> [T]here is probably no more appropriate place for
> reasonably amplified free speech than the streets and
> sidewalks of a downtown business district. Streets,
> sidewalks, parks, and other similar public places are so
> historically associated with the exercise of First
> Amendment rights that access to them for the purpose of
> exercising such rights cannot constitutionally be denied
> broadly and absolutely.

Reeves v. McConn, 631 F.2d 377, 384 (5th Cir. 1980) (citation and

internal quotation marks omitted). According to Supreme Court

precedent, Augusta-Richmond County may regulate amplified speech

in its downtown business district, but such regulation must be

scrutinized thoroughly.

Citing Ward, Defendants contend that they are not required to

regulate loud noises with the least restrictive or least intrusive

means, but Defendants' attempts to classify as constitutional its

application of Augusta-Richmond County's ordinances as applied is

questionable. The Court does not specify what regulations Augusta

Richmond-County may impose regarding loud noises to satisfy its

interest, but it seems there are several options to target loud

noises other than broadly prohibiting any amplified speech on the

sidewalks of its predominately commercial, downtown district.

Defendants continue, in their argument against Plaintiff's contention that the statute is vague, to advance the position that Plaintiff's amplified speech is clearly prohibited because it drew attention to the business behind him. Aside from the fact it does not appear Plaintiff engaged in commercial advertising or intended to attract attention to the business located behind him, Broad Street is the main street in downtown Augusta, containing several businesses. Accepting Defendants' application of the ordinance to ban amplified speech in front of any commercial building essentially equates to banning all amplified speech on Augusta's downtown sidewalks. Such a ban puts Plaintiff in a predicament the Southern District of Florida recently held unconstitutionally stripped First Amendment protections: "The restriction presents [Plaintiff] with the following options: (1) convey [his] message loudly but far away from anyone who may hear the message or (2) convey [his] message near people using a sound level equivalent to a one-on-one conversation. Both options severely hinder the dissemination of the protected speech." Coal. of Immokalee Workers, Inc. v. Town of Palm Beach, No. 16-CV-80284-MIDDLEBROOKS, 2016 WL 8739993, at *10 (S.D. Fla. Mar. 11, 2016).

Defendants cite to Kovacs, 336 U.S. at 83-84, for the proposition that a municipality can forbid "loud and raucous noises." (Resp. to Prelim. Inj., at 5 (internal quotation marks omitted).) Again, the Court does not question Defendants' ability

to regulate loud and raucous noises. <u>Kovacs</u>, however, addressed the issue in the context of sound trucks and other vehicles with mounted amplifiers noting the danger to traffic and the threat of loud noises on streets in residential neighborhoods. Augusta-Richmond County has an ordinance regulating sound trucks. <u>See</u> Sec. 3-6-2(p). But the record, as it currently stands, contains no mention of Plaintiff's intent to use a sound truck. Moreover, Plaintiff requests permission to share his message on the downtown sidewalks, not in the streets or in strictly residential areas. Accordingly, the Court is unpersuaded by Defendants' attempt to liken this case to <u>Kovacs</u>.

Defendant further references <u>Pine</u>. <u>Pine</u> upheld an ordinance banning amplified speech within 100 feet of a health care facility's property line. 762 F.3d at 1264, 1273-75. Again, the Court finds vast differences between the ordinance in <u>Pine</u> and the application of the ordinances at issue here. In deciding <u>Pine</u>, the Eleventh Circuit discussed the government's high interest in protecting peace and tranquility essential to patient health. <u>Id.</u> at 1271, 1273. Therefore, based on the information at hand, the government interest in <u>Pine</u> was greater than Augusta-Richmond County's interest here, and the ordinance in <u>Pine</u> was far more narrowly tailored than the application of the ordinances in this case banning all amplified speech at all times in Augusta's downtown area. <u>See</u> <u>id.</u> at 1269, 1274.

Based on the foregoing, Plaintiff has met his burden on the first requirement. Because Plaintiff shows the ordinances are not narrowly tailored as applied, the Court need not analyze the "alternative channels" prong of the First Amendment analysis at this time.[3] See id. at 1268.

## B. Irreparable Injury

Both sides cite KH Outdoor, LLC v. City of Trussville. 458 F.3d 1261 (11th Cir. 2006). Plaintiff relies on KH Outdoor for its statement that "it is well established that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Id. at 1271-72 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Defendants rely on KH Outdoor for the proposition that a violation of the First Amendment "does not automatically require a finding of irreparable injury." Id. at 1272. Defendant primarily relies, however, on the fact that Plaintiff fails to show a substantial likelihood of success on the merits. Based on the information at hand, the Court is persuaded that Plaintiff's inability to speak with amplification at any volume on any public sidewalk in Augusta

---

[3] For these reasons, the Court likewise need not address the facial challenge to the ordinances under the First Amendment at this stage. Additionally, the Court need not address Plaintiff's challenge to the ordinances on vagueness grounds.

is irreparably chilling his First Amendment rights, satisfying the second requirement.[4]

## C. Balance of Harms

As stated above, the chilling of Plaintiff's rights to speech is serious.  Conversely enjoining Defendants' enforcement of the relevant ordinances as to all amplified speech, at all times, and in all areas imposes no real harm on Defendants.  The requested injunction will prevent Defendants from restricting Plaintiff's ability to use amplified speech at a reasonable volume on public sidewalks.  Considering Defendants possess no real interest in unconstitutionally limiting Plaintiff's First Amendment rights, the damage to Defendants resulting from Plaintiff's preaching at a reasonable volume in Downtown Augusta is no comparison to the harm of chilling Plaintiff's First Amendment guarantees.  See KH Outdoor, 458 F.3d at 1272.

---

[4] Without deciding one way or the other, the Court understands this issue to be closer than the Parties apparently do.  The record shows that Plaintiff was arrested while preaching at the Festival in 2018.  Plaintiff then requested permission from Defendants to preach with amplification at the Festival in 2019. Defendants denied that request, and Plaintiff was unable to preach with amplification at the 2019 Festival for that reason.  Plaintiff filed the present lawsuit after the 2019 Festival, and therefore, the issuing of an injunction at this time cannot restore Plaintiff's right to preach with amplification at the 2019 Festival.  Nevertheless, Plaintiff claims he is currently barred from speaking with amplification at any time, necessitating the injunction.  If Plaintiff only speaks in Augusta at the annual Festival, however, it is unclear whether he is currently suffering irreparable injury or if the irreparable injury will only arise at the time of the 2020 Festival. Regardless, Defendants did not raise this argument, and it is not the Court's responsibility to make the argument for them.

### D. Adverse Public Interest

Finally, Defendants argue an injunction will render Augusta-Richmond County unable to enforce its noise and disorderly conduct regulations leaving it without a mechanism to "protect its citizens from unwelcome noises or behaviors that threaten public safety." (Resp. to Mot. for Prelim. Inj., at 11.)  Nothing in Plaintiff's requested injunction will create the ominous situation Defendants fear.  First, this Order does not strike down any ordinance, and Defendants can continue to protect citizens as permitted by Augusta-Richmond County's ordinances.  Second, amplified preaching at a reasonable level will not greatly harm the public.  Finally, and most importantly, the public has no interest in the unconstitutional application of local ordinances.  See KH Outdoor, 458 F.3d at 1272.


### IV. CONCLUSION

Based on the foregoing, Plaintiff's motion for a preliminary injunction (Doc. 9) is **GRANTED.**  Pursuant to Federal Rule of Civil Procedure 65(a), the Court **HEREBY ORDERS** that Defendants, including Defendants' officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them, immediately cease enforcing Augusta-Richmond County Code Secs. 3-7-1(r) and 3-6-2(c), whether individually or in conjunction, so as to prohibit

constitutionally-protected amplified speech on the public sidewalks in consolidated Augusta-Richmond County. Nothing in this Order prohibits Augusta-Richmond County's enforcement of Augusta-Richmond County Code Secs. 3-7-1(r) and 3-6-2(c) in constitutionally permissible ways.

ORDER ENTERED at Augusta, Georgia, this 21ST day of November, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ERIC JOSEPH LOVE,                    *
                                     *
        Plaintiff,                   *
                                     *
        v.                           *        CV 119-120
                                     *
AUGUSTA-RICHMOND COUNTY,             *
GEORGIA; SHERIFF RICHARD             *
ROUNDTREE, In His Official           *
Capacity as Sheriff with             *
Richmond County Sheriff's            *
Office; JEFF JOHNSON,                *
Individually and In His              *
Official Capacity as Deputy          *
with Richmond County Sheriff's       *
Office,                              *
                                     *
        Defendants.                  *

---

**O R D E R**

---

Before the Court is the Parties' motion to enter as an order of the Court their Consent Order and Judgment (Doc. 24-1). (Doc. 24.) Upon due consideration, the Court **GRANTS** the motion and **HEREBY ORDERS** that the Consent Order and Judgment, attached hereto and signed, **SHALL** constitute a final judgment in this matter. Upon receipt of the contemplated payments, the Parties **SHALL** dismiss the action in accordance with Federal Rule of Civil Procedure 41. (Clerk's Minutes, Doc. 23.) The Parties agree that the Court shall retain jurisdiction over this matter and the Parties as may be

necessary to enforce the provisions of the Consent Order and

Judgment.   (Consent Order & J., ¶ 5.)

   **ORDER ENTERED** at Augusta, Georgia, this 21st day of February,

2020.

> J. RANDAL HALL, CHIEF JUDGE
> UNITED STATES DISTRICT COURT
> SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

ERIC JOSEPH LOVE )
       )
    Plaintiff, )
       )
vs. )    Case No.: 1:19-cv-00120-JRH-BKE
       )
AUGUSTA-RICHMOND COUNTY, )
GEORGIA, SHERIFF RICHARD ROUNDTREE, )
in his official capacity as Sheriff with )
Richmond County Sheriff's Office, and )
JEFF JOHNSON, individually and in his )
official capacity as Deputy with )
Richmond County Sheriff's Office, )
       )
    Defendants. )

## CONSENT ORDER AND JUDGMENT

Final resolution of this matter and controversy has been settled by and between the Defendants Augusta-Richmond County, Georgia, Richard Roundtree, and Jeff Johnson and Plaintiff Eric Joseph Love, and accepted by the Court, as reflected herein.

IT IS on this 21ST day of February, 2020, ORDERED AND ADJUDGED AS FOLLOWS:

1.    Defendants, their agents, officials, servants and employees are hereby permanently enjoined from enforcing Augusta, Georgia Code §§ 3-6-2(c) and/or 3-7-1(r) so as to prohibit constitutionally-protected amplified speech on the public sidewalks in consolidated Augusta-Richmond County.

2.    Defendants shall pay Plaintiff Eric Joseph Love $1.00 in nominal damages.

3.    Defendants shall pay Plaintiff Eric Joseph Love $1,000.00 in actual damages.

4.     Defendants shall pay attorney fees and expenses to Plaintiff's attorneys in the amount of $33,750.00 within 20 days of the entry of this Order.

5.     This Court retains jurisdiction of this case solely to enforce the terms of this consent order and judgment.

BY THE COURT:

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

WE HEREBY CONSENT TO THE FORM
AND ENTRY OF THE ABOVE ORDER:

| | |
|---|---|
| s/ Nathan E. Huff [Local Counsel]<br>GA Bar No. 773611<br>Cleary, West & Huff, LLP<br>1223 George C. Wilson Dr.<br>Augusta, GA 30909<br>706-860-9995 telephone<br>Email: nhuff@cwhllp.com<br><br>Attorney for Plaintiff | s/ Nathan W. Kellum [Lead Counsel]<br>TN BAR #13482; MS BAR # 8813<br>Center for Religious Expression<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN 38117<br>(901) 684-5485 telephone<br>Email: nkellum@crelaw.org<br><br>Attorney for Plaintiff |
| s/Tameka Haynes<br>Frails & Wilson LLC<br>211 Pleasant Home Road, Suite A1<br>Augusta, GA 30907<br>Phone: 706-855-6715<br>Fax: 706-855-7631<br>thaynes@frailswilsonlaw.com<br><br>Attorney for Defendants | |

2



PLAINTIFF'S EXHIBIT D
Blumberg No. 5113

*"EXHIBIT A"*

**Chapter 6**

**NOISE**

**Sec. 3-6-1. Regulated.**

(a) Purpose: It shall be unlawful for any person to make, continue or cause to be made or continued or permit to be made, continued or caused any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County.

(b) Plainly audible as used in this Chapter means any noise or sound which can be heard by the auditory senses of a person standing at a distance no less than the distances set forth below from the sound.  Words or phrases need not be discernable for music and other noises to be prohibited.  Bass reverberations are included in the prohibited noises.

**Sec. 3-6-2. Prohibited loud noises enumerated.**

(a) Restrictions of 300 feet for 7:00 a.m. through 11:00 p.m. Sunday through Thursday and 7:00 a.m. through 12:00 midnight on Friday and Saturday.

   (1) *Mechanical sound-making devices.* It is unlawful for any person or persons to play, use, operate, or permit to be played, used, or operated any radio receiving device, television, stereo, musical instrument, phonograph, sound amplifier or other machines or devices for the producing, reproducing or amplifying of sound and/or noise at such a volume and in such a manner so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 300 feet or more from the place, building, structure or vehicle, or in the case of real property, beyond the property limits, in which it is located, whichever is farthest, between the hours of 7:00 a.m. and 11:00 p.m. Sunday through Thursday and between the hours of 7:00 a.m. and 12:00 midnight on Friday and Saturday.

   (2) *Yelling, shouting, other human-produced sounds.* It is unlawful for any person or persons to yell, shout, hoot, whistle, or sing on the public streets or sidewalks

or on private property so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 300 feet or more from the place, building, structure, or in the case of real property, beyond the property limits, in which the person is located, whichever is farthest, between the hours of 7:00 a.m. and 11:00 p.m. Sunday through Thursday and between the hours of 7:00 a.m. and 12:00 midnight on Friday and Saturday.

(3) *Commercial advertising.* It is unlawful for any person or persons to use, operate, or permit to be used or operated any radio receiving device, musical instrument, phonograph, loud speaker, sound amplifier or other machine or device for the production or reproduction of sound which is cast upon the public streets or other public property for the purpose of commercial advertising or which serves to attract the attention of the public to any building, structure or vehicle in such a manner so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 300 feet or more from the source of the sound cast upon the public streets or other public property or from the place, building, structure, or in the case of real property, beyond the property limits, in which it is located, whichever is farthest, between the hours of 7:00 a.m. and 11:00 p.m. Sunday through Thursday and between the hours of 7:00 a.m. and 12 midnight on Friday and Saturday.

(4) *Party noise.* It is unlawful for any person or persons in charge of a party or other social event that occurs on any private property to allow that party or social event to produce noise in such a manner that such noise is plainly audible at a distance of 300 feet or more from the building or structure from which the noise is emanating or in the case of real property, beyond the property limits, on which the party or social event is located, whichever is farthest, between the hours of 7:00 a.m. and 11:00 p.m. Sunday through Thursday and between the hours of 7:00 a.m. and 12 midnight on Friday and Saturday. For the purposes of this subsection, a "person in charge of a party or other social event" shall mean any adult person who resides in or on the premises involved in such party or social event and is present at such party or social event. For the purposes of this subsection, "noise" shall mean the same sounds, or any combination thereof, as described in paragraph a of this section.

(b) *Restrictions of 100 feet for 11:00 p.m. through 7 a.m. Sunday through Thursday and 12:00 midnight through 7:00 a.m. on Saturday and Sunday.*

(1) *Mechanical sound-making devices.* It is unlawful for any person or persons to play, use, operate, or permit to be played, used, or operated any radio receiving device, television, stereo, musical instrument, phonograph, sound amplifier or other machines or devices for the producing, reproducing or amplifying of sound and/or noise at such a volume and in such a manner so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 100 feet or more from the building, structure, or motor vehicle or in the case of real property, beyond the property limits, in which it is located, whichever is farthest, between the hours of 11:00 p.m. and 7:00 a.m. Sunday through Thursday and between the hours of 12:00 midnight and 7:00 a.m. on Saturday and Sunday.

(2) *Yelling, shouting, other human-produced sounds.* It is unlawful for any person or persons to yell, shout, hoot, whistle, or sing on the public streets or sidewalks or on private property so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 100 feet or more from the place on public streets and sidewalks, or in the case of private real property, beyond the property limits, on which the person is located, whichever is farthest, between the hours of 11:00 p.m. and 7:00 a.m. Sunday through Thursday and between the hours of 12:00 midnight and 7:00 a.m. on Saturday and Sunday.

(3) *Commercial advertising.* It is unlawful for any person or persons to use, operate, or permit to be used or operated any radio receiving device, musical instrument, phonograph, loud speaker, sound amplifier or other machine or device for the production or reproduction of sound which is cast upon the public streets or other public property for the purpose of commercial advertising or which serves to attract the attention of the public to any building, structure or vehicle in such a manner so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 100 feet or more from the source of the sound cast upon the public streets or other public property or from the building, structure, or in the case of real property, beyond the property limits, in which it is located, whichever is farthest, between the hours of 11:00 p.m. and 7:00 a.m. Sunday through Thursday and between the hours of 12:00 midnight and 7:00 a.m. on Saturday and Sunday.

(4) *Party noise.* It is unlawful for any person or persons in charge of a party or other social event that occurs on any private property to allow that party or event to produce noise in such a manner so as to such noise is plainly audible at a distance of 100 feet or more from the building or structure from which the party noise is emanating or in the case of real property, beyond the property limits, on which the party or social event is located, whichever is farthest, between the hours of 11:00 p.m. and 7:00 a.m. Sunday through Thursday and between the hours of 12:00 midnight and 7:00 a.m. on Saturday and Sunday. For the purposes of this subsection, a "person in charge of a party or other social event" shall mean any adult person who resides in or on the premises involved in such party or social event and is present at such party or social event. For the purposes of this subsection, "noise" shall mean the same sounds, or any combination thereof, as described in paragraph b of this section.

(c) *Other restrictions.*

(1) *Animals, birds.* The keeping of any animal or bird which, by causing frequent or long-continued noise, shall disturb the comfort or repose of any persons in the vicinity.

(2) *Steam whistles.* The blowing of any steam whistle attached to any stationary boiler except to give notice of the time to begin or stop work or as a warning of fire or danger or upon request of proper county authorities.

(3) *Exhausts.* The discharge into the open air of the exhaust of any steam engine, stationary internal-combustion engine or motorboat except through a muffler or other device which will effectively prevent loud or explosive noises therefrom.

(4) *Defect in vehicle or load.* The use of any automobile, motorcycle or vehicle so out of repair, so loaded or in a manner as to create loud and unnecessary grating, grinding, rattling or other noise within a residential area.

(5) *Loading, unloading, opening boxes.* The creation of a loud and excessive noise in connection with loading or unloading any vehicle or the opening and destruction of bales, boxes, crates and containers.

(6) *Construction or repair of buildings.* The erection (including excavation), demolition, alteration or repair of any building, as well as the operation of any pile driver, steam shovel, pneumatic hammer, derrick, steam or electric hoist, or any other similar equipment attended by loud or unusual noise, other than between the hours of 7:00 a.m. and 10:00 p.m. on weekdays; however, the inspections and permits department shall have the authority, upon determining that the loss or inconvenience which would result to any party in interest would be extraordinary and of such nature as to warrant special consideration, to grant a permit for a period not to exceed ten (10) days within which time such work and operation may take place within the hours of 10:00 p.m. to 7:00 a.m.

(7) *Schools, courts, places of worship.* The creation of any excessive noise on any street adjacent to any school, institution of learning, place of worship or court while in use, which unreasonably interferes with the normal operation of that institution, provided that conspicuous signs are displayed in those streets indicating a school, court, or place of worship.

(8) *Transportation of metal rails or similar materials.* The transportation of rails, pillars or columns of iron, steel or other material over and along streets and other public places so as to cause loud noises or as to disturb the peace and quiet of those streets or other public places.

(9) *Blowers.* The operation of any noise-creating blower or power fan or any internal-combustion engine, the operation of which causes noise due to the explosion of operating gases or fluids, unless the noise from the blower or fan is muffled and the engine is equipped with a muffler device sufficient to deaden the noise.

(10) *Sound trucks.* The use of mechanical loudspeakers or amplifiers on trucks or other moving or standing vehicles for advertising or other commercial purposes. The use of sound trucks for noncommercial purposes during hours and in places and with volume as would constitute this use as a public nuisance.

(11) *Horns, signaling devices.* The sounding of any horn or signaling device on any automobile, motorcycle or other vehicle on any street or public place in Augusta-Richmond County except as a danger warning; the creation of any unreasonable

loud or harsh sound by means of any signaling device and the sounding of any device for any unnecessary and unreasonable period of time; the use of any signaling device except one operated by hand or electricity; the use of any horn, whistle or other device operated by engine exhaust and the use of any signaling device when traffic is for any reason held up.

(d) *Restrictions for areas within apartments, condominiums, townhouses, duplexes, or other such residential dwelling units.* Except for persons within commercial enterprises that have an adjoining property line or boundary with a residential dwelling unit, it is unlawful for any person to make, continue, or cause to be made or continued any noise in such a manner as to be plainly audible to any other person a distance of five feet beyond the adjoining property line wall or boundary of any apartment, condominium, townhouse, duplex, or other such residential dwelling units with adjoining points of contact. For the purposes of this subsection, "noise" shall mean human-produced sounds of yelling, shouting, hooting, whistling, singing, or mechanically-produced sounds made by radio-receiving device, television, stereo, musical instrument, phonograph sound amplifier or other machines or devices for the producing, reproducing, or amplifying of sound, or any combination thereof. For the purposes of this subsection, "property line or boundary" shall mean an imaginary line drawn through the points of contact of (1) adjoining apartments, condominiums, townhouses, duplexes or other such residential dwelling units with adjoining points owned, rented, or leased by different persons; or (2) adjoining common areas or adjoining exterior walls. Said property line or boundary includes all points of a plane formed by projecting the property line or boundary including the ceiling, the floor, and the walls.

(e) *The prohibitions of this section shall not apply to the following:*

1. Any vehicle of Augusta-Richmond County while engaged in necessary public business.

2. Noise from an exterior burglar alarm of any building, or from any automobile alarm, provided such alarm shall terminate its operation within 15 minutes of its activation.

3. The generation of noise in the performance of any work or action necessary to deliver essential services including, but not limited to, water or sewer projects, and other related public works projects; repairing gas, electric, telephone, and/or public transportation facilities; removing fallen trees on public rights-of-way; or abating emergency conditions threating the public health, safety or general welfare.

4. Noise from snow blowers, snow throwers, and snowplows.

5. Noise generated from celebrations, outdoor festivals, and/or municipally sponsored or approved events which were approved by contract, permit or otherwise.

6. Noises resulting from the operation of the Augusta Regional Airport and the Daniel Field Airport.

8. Noises resulting from any event sponsored by, associated with, or approved by a recognized institution of learning.

9. Noises that result from or arise out of or stem from the occurrence of a professional sporting event or organized sports league.

10. Noises and/or sounds caused to be made by manufacturing, governmental, or commercial entities in the normal course of their business.

### Sec. 3-6-3. Health Care Facility Zones.

(a) *Purpose.* There shall be within Augusta-Richmond County what shall be known as health care facility zones around such hospitals, sanitoriums, physicians' offices, walk-in medical centers, medical diagnostic centers, surgical centers, and facilities which are licensed, certified or otherwise authorized to perform medical procedures in this state and to provide health services that are free from shouting and other amplified sounds. "Health care facility" shall not include residential homes, convalescent homes or other facilities that provide long term residency.

(b) *Limitations.* No person shall shout or cause to be produced, or allow to be produced, by any means, any amplified sound, including the playing, using, operating, or permitting to be played, used, or operated any radio receiving device, television, stereo, musical instrument, phonograph, tape or CD player, sound amplifier, or other machine or device that produces or reproduces amplified sound on any public street or sidewalk or from private property that is plainly audible at a distance of 100 feet of the property line of a property housing a health care facility or any other institution reserved for individuals seeking health care treatment, the sick, or infirmed, provided that the public streets or sidewalks adjacent to such facilities shall be clearly marked by conspicuous signs identifying those areas.

(c) *Signage required.* It shall be the duty of each health care facility or owner of such establishment to erect and maintain lampposts or signs in some conspicuous place on every street, avenue or alley in the vicinity of every health care facility, public or private. The signs which must meet and conform to the city's sign code shall be placed on such streets, avenues or alleys upon which a health care facility is situated and shall read in a manner similar to, but not restricted to, the following: "Hospital" or "Health Care Facility."



Public Service Committee Meeting  Commission Chamber - 6/8/2021
**ATTENDANCE:**

Present: Hons. Johnson, Vice Chairman; Clarke and Sias, members.
Absent: Hon. Hardie Davis, Jr., Mayor; Frantom, Chairman.

## PUBLIC SERVICES

1. New Location A. N. 21-16: A request by Florence P. Henley for an on premise consumption Liquor, Beer & Wine License to be used in connection with Tiffany's Eatery located at 828 Broad Street. District 1. Super District 9.

   **Item Action:** Approved

   **Motions**

   | Motion Type | Motion Text | Made By | Seconded By | Motion Result |
   |---|---|---|---|---|
   | Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

2. Discussion: A request by Tina Houston for a Massage Operator License to be used in connection with Tina Therapeutic located at 1913 Olive Road. District 2. Super District 9.

   **Item Action:** Approved

   **Motions**

   | Motion Type | Motion Text | Made By | Seconded By | Motion Result |
   |---|---|---|---|---|
   | Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

3.

Discuss R&B Hall of Fame Induction ceremony. **(Requested by Commissioner Sean Frantom - deferred from May 25, 2021 Public Services Committee)**

**Item Action:** Disapproved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Defer | Motion to refer this item to the Attorney and the Administrator for consideration. Mr. Clarke votes No. Motion Fails 2-1. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Fails |

4. Motion to approve awarding East Coast Pyrotechnics, Inc. bid item #21-194 for Fireworks for Independence Day Celebration in the amount of $30,000.

**Item Action:** Approved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

5. Motion to approve applying to Georgia Association of Metropolitan Planning Organizations (GAMPO) for the FY 2022 Bike and Pedestrian Plan Update funds.

**Item Action:** Approved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

6. Motion to approve the minutes of the Public Services Committee held on May 25, 2021.

**Item Action:** Approved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

7. Request Commission approval to amend Augusta, Georgia Code, Title 3, Article 18, Chapter 6: Noise Ordinance, Section 3-6-1 through Section 3-6-3 so as to provide clarity with regards to enforcement.

**Item Action:** Approved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Approve | Motion to approve. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner John Clarke | Passes |

8. Motion to approve Augusta Transit's (AT) reinstatement of bus fares and ending rear door boarding. All Patrons will continue to wear mask on the bus and in the Transit Facilities until such practices are suspended.

**Item Action:** Approved

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| | Unanimous consent is given to add this item to the agenda. | | | |

**Motions**

| Motion Type | Motion Text | Made By | Seconded By | Motion Result |
|---|---|---|---|---|
| Approve | Motion to approve with an effective date of July 15, 2021 and bus signs in place by the end of the year. Motion Passes 3-0. | Commissioner Sammie Sias | Commissioner Jordan Johnson | Passes |

www.augustaga.gov

Excerpt
Public Services Committee
June 8, 2021

Noise Ordinance

    Mr. Sias:  Mr. Sherman, I was around here when we stopped enforcing our noise ordinance because of enforcement issues.  In this revised version have we coordinated with the Sheriff's Office and our Marshal's Office?

    Mr. Sherman:  An outside attorney prepared this.  He was also the attorney for the Sheriff's office so there has been coordination.

    Mr. Sias:  Administrator, in your view did you have any conversation with the Sheriff himself in connection with this noise ordinance?

    Mr. Donald:  No, sir.  We've been coordinating with that office but we have not had any direct communication with the Sheriff on this matter.  We have with his representatives but not with him directly.

    Mr. Brown:  This noise ordinance has been seen by the Sheriff's department and they are supportive of this noise ordinance.  Attorney Randy Frails along with myself and formerly Geoffrey Als prepared this ordinance but we did it with the willingness of the Sheriff to enforce it in mind.

    Mr. Sias:  I just wanted to be sure if we put this on the street that we don't want to have any backlash from the Sheriff that it's not enforceable. With that being said move to approve.

    Mr. Clarke:  Second.

Motion carries 3-0.

ORDINANCE NO. 7782

AN ORDINANCE TO AMEND THE AUGUSTA, GEORGIA CODE, TITLE 3, CHAPTER 6, NOISE, SECTION 3-6-1 THROUGH SECTION 3-6-3, SO AS TO ADOPT THE PROPOSED NEW NOISE ORDINANCE THAT WILL PROVIDE CLARITY WITH REGARDS TO ENFORCEMENT; TO REPEAL ALL CODE SECTIONS AND ORDINANCES AND PARTS OF CODE SECTIONS AND ORDINANCES IN CONFLICT HEREWITH; TO PROVIDE AN EFFECTIVE DATE AND FOR OTHER PURPOSES.

NOW, BE IT ORDAINED BY THE AUGUSTA, GEORGIA COMMISSION AND IT IS HEREBY ORDAINED BY THE AUTHORITY OF SAME, THE NOISE ORDINANCE IS AMENDED AS FOLLOWS:

SECTION 1.  *Title 3, Chapter 6, NOISE, Section 3-6-1 through Section 3-6-3*, are hereby amended by deleting these sections in their entirety, AND new *Section 3-6-1 through Section 3-6-3*, are hereby inserted to replace the repealed sections as set forth in "Exhibit A" hereto.

SECTION 2.  This ordinance shall become effective upon adoption.

SECTION 3.  All ordinances or parts of ordinances in conflict herewith are hereby repealed.

Adopted this 1st day of July, 2021.

_____
Hardie Davis, Jr.
As its Mayor

Attest: _____
Lena J. Bonner, Clerk of Commission
Seal:

First Reading: <u>June 15, 2021</u>

Second Reading: <u>July 1, 2021</u>

CERTIFICATION

The undersigned Clerk of Commission, Lena J. Bonner, hereby certifies that the foregoing Ordinance was duly adopted by the Augusta, Georgia Commission on _____, 2021 and that such Ordinance has not been modified or rescinded as of the date hereof and the undersigned further certifies that attached hereto is a true copy of the Ordinance which was approved and adopted in the foregoing meeting(s).


_____
Lena J. Bonner, Clerk of Commission


Published in the Augusta Chronicle.


Date: _____

**EXHIBIT E**

**GEORGIA**
## UNIFORM TRAFFIC CITATION, SUMMONS AND ACCUSATION
**SS NR-GA1210000**    299303

Court Case Number    NCIC Number    Citation Number

### RICHMOND COUNTY SHERIFF'S OFFICE
AUGUSTA, GEORGIA 30901

Upon _____ Month _____ (Day) _____ (Year) _____ at _____ ☑ A.M. ☐ P.M.

Operator License No. _____

License Class or Type _____ State _Ga_ Endorsements _None_ Expires _10/2/23_

Name _____ (Last) _Steven_ (First) _Christian_ (Middle)

Address _____

City _Augusta_ State _Ga_ Zip Code _30906_

DOB _____ Hair _gray_ Hgt _5010_ Wgt _80_ Sex _M_ Race _W_ Eyes _haz_

Veh. Yr _____ Make _____ Model _____ Color _____

Registration No. _____ Yr. _____ State _____

CDL ☐YES ☐NO   ACCIDENT ☐YES ☐NO   INJURIES ☐YES ☐NO   FATALITIES ☐YES ☐NO

☐ 2 LANE ROAD   ☐ DRIVER REQUESTED ACCURACY CHECK ☐ VASCAR ☐ LASER ☐ RADAR
Within the State of Georgia, did commit the following offense: SPEEDING-Clocked by _____ ☐ PATROL VEHICLE ☐ OTHER
(Serial # _____ Calibration/Check _____ ) at _____ MPH in a _____ zone

☐ DUI (Test Administered: ☐ BLOOD ☐ BREATH ☐ URINE ☐ OTHER) DUI Test Results _____
TEST ADMINISTERED BY (If Applicable): _____

OFFENSE (Other than above) _Prohibited Noises_
In Violation of Code Section _3-6-3(b)_ of ☐ State Law ☑ Local Ordinance
REMARKS _Witness: Thomas R. Burnside III, 7M Professional Pkwy_
_706 432 8320 Witness: Lillie Blackwell, 3903 Anderson Pkwy_
_706 751 3210_ PHONE: _408 849 8145_

POE: _Augusta Richmond_ RELEASED TO: _____

**PAY ONLINE AT WWW.AUGUSTAGA.GOV/TRAFFICBUREAU**

| WEATHER | (A) ROAD (B) | TRAFFIC | LIGHTING | COMMERCIAL VIOLATION INFORMATION |
|---|---|---|---|---|
| ☐ Clear ☐ Cloudy ☐ Raining ☐ Other | ☑ Dry ☐ Wet ☐ Ice ☐ Other | ☐ Concrete ☐ Blacktop ☐ Dirt ☐ Other | ☐ Light ☐ Medium ☐ Heavy | ☑ Daylight ☐ Darkness ☐ Other | ☐ 16+ Passengers ☐ Commercial Vehicle Violation ☐ Hazardous Material Violation |

County of _RICHMOND_ and _____ miles _____ of (city) _____
on _____ at or near _____
at/on (secondary location) _3903 Professional Pkwy_ or within (city) _Augusta_

OFFICER (Print) _P. Johnson A-3_ Badge # _A 3010_ Div _Patrol 2A 3_

You are hereby ordered to appear in Court to answer this charge on the _18th_ day of _July_
_2022_ at _7630_ ☑ AM ☐ PM in the **STATE** / **MAGISTRATE** Court
at _735 James Brown Blvd_
City _AUGUSTA_ , Georgia 30901.

**NOTICE:** This citation shall constitute official notice to you that <u>failure to appear in Court</u> at the date and time stated on this citation to dispose of the cited charges against you shall cause the designated Court to forward your driver's license number to the Department of Driver Services, and <u>your driver's license shall be suspended.</u> (Georgia Code 17-6-11 and 40-5-56) The suspension shall remain in effect until such time as there is a satisfactory disposition in this matter or the Court notifies the Department of Driver Services.
LICENSE DISPLAYED IN LIEU OF BAIL ☐ YES ☐ NO RELEASED TO _____
SIGNATURE ACKNOWLEDGES SERVICE OF THIS SUMMONS AND RECEIPT OF COPY OF SAME

SIGNATURE X _____

**ARRESTING OFFICER'S CERTIFICATION**
The undersigned has just and reasonable grounds to believe, and does believe, that the person named herein has committed the offense set forth, contrary to law.

299303