IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| STEVEN SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>AUGUSTA-RICHMOND COUNTY,<br>GEORIGA; RICHARD ROUNDTREE,<br>individually and in his official capacity as<br>Sheriff of Richmond County, Georgia;<br>DEPUTY SMITH, individually and in his<br>official capacity as a sworn officer of the<br>Richmond County Sheriff's Office;<br>MAJOR KEVIN JONES, individually and<br>in his official capacity as Commander of<br>the Charlie Webster Detention Center<br>operated by the Richmond County<br>Sheriff's Office; LIEUTENANT DANNY<br>WHITEHEAD, individually and in his<br>official capacity as a sworn officer of the<br>Richmond County Sheriff's Office; and<br>JOHN DOE DEFENDANTS ONE<br>THROUGH SIX;<br><br>    Defendants. | CASE NO.: 1:22-CV-149 |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDMGENT**

COME NOW Defendants and file this Brief in support of Defendants' Motion for

Summary Judgment, showing the Court the following:

**I.      FACTS**

Plaintiff protests against abortion in front of A Preferred Women's Health Center

("APWHC") in Augusta, Georgia. Doc. 1 ¶ 4.  The Richmond County Sheriff's Office

("RCSO") receives numerous complaints about Plaintiff and other protestors related to

harassment, trespassing, and loudness. Exhibits A, B, C, E, G.  Defendants Deputy Marlon

Smith and Captain Danny Whitehead, along with other RCSO deputies, have warned Plaintiff about violating local and state laws while he protests.  However, Plaintiff often trespasses on private property and emits loud and amplified sounds near the medical facility in violation of Augusta's noise ordinance. Exhibits A, E.  Plaintiff filed this action seeking a declaratory judgement that Augusta's noise ordinance is unconstitutional. Doc. 1 ¶ 70.  Plaintiff also alleges that Sheriff Richard Roundtree, Captain Whithead, and Deputy Smith have violated his constitutional rights and seeks relief under § 1983. *Id.* ¶¶ 94-99.  Additionally, Plaintiff alleges that Defendants falsely arrested him in violation of Georgia state law. *Id.* ¶¶ 101-7.

## II.   SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact. Fed. R. Civ. Pro. 56 (a).  A party asserting that a fact cannot be genuinely disputed must support the assertion by citing depositions, documents, affidavits, or other materials or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1).  When the plaintiff's version of facts is blatantly contradicted by documentary evidence, a court should not adopt that version for purposes of ruling on summary judgment. *Morton v. Kirkwoo*d, 701 F.3d 1276, 1284 (2013); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   ARGUMENT

### A. Augusta, Georgia Ordinance No. 7782 Is Constitutional.

Plaintiff seeks a declaratory judgment that Augusta, Georgia's noise ordinance is unconstitutional on its face and as applied to abortion protesters. Doc. 1 ¶ 70. Specifically, Plaintiff alleges that the ordinance is content based, not narrowly tailored, not related to a legitimate government purpose, not the least restrictive means to accomplishing any

purpose, and fails to leave open alternative avenues of expression. ¶ 72.  The majority of Plaintiff's complaint focuses on § 3-6-3 of the Augusta, Georgia Code, and Plaintiff has never been cited under any other section. Thus, § 3-6-3 is the primary focus of this brief as it relates to Plaintiff's as applied challenge.

### 1. Section 3-6-3 is a valid content neutral time, place, and manner regulation.

Content-based laws are aimed at the suppression of free expression and are subject to strict scrutiny as they presumptively violate the First Amendment. *Renton v. Playtime Theatres,* 475 U.S. 41, 46-7 (1986). Content neutral laws are acceptable since they serve purposes unrelated to the content of expression, and they are simply subject to intermediate scrutiny. *Id.* at 47.  Thus, even in a public forum governments may impose reasonable restrictions on the time, place, or manner of protected speech if the restrictions: a) are justified without reference to the content of the regulated speech, b) are narrowly tailored to serve a significant government interest, and c) leave open ample alternative channels for communication of the information. *Ward* v. *Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293(1984)).

### a. Section 3-6-3 is content neutral.

To determine if a regulation is content neutral, the principal inquiry is whether the regulation of speech was adopted because of disagreement with the message it conveys. *Ward* at 791.  A regulation whose purpose is unrelated to the content of speech is deemed content neutral even if it has an incidental effect on some speakers or messages. *Id.* Conversely, a regulation is content based if it applies to particular speech because of the topic discussed or message expressed. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

3

To determine if a regulation is content based, a court considers whether it facially draws distinctions based on the message a speaker conveys. *Id*.

Here, it is clear that the noise ordinance was adopted without reference to the content of regulated speech.  As stated in Augusta, Georgia Code § 3-6-1(a), the purpose of the regulation is to target "loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures, or endangers the comfort, repose, health, peace or safety" of Augusta's citizens. Exhibit F.  Furthermore, § 3-6-3(a) is concerned with "shouting and other amplified sounds" near health care facilities. Exhibit F.  Nothing in the text of the ordinance references the content of any speech and the ordinance applies equally to all ideas and messages.  Thus, the noise ordinance and specifically § 3-6-3 is content neutral.

### b. Section 3-6-3 is narrowly tailored to serve a significant government interest.

A regulation is narrowly tailored if it does not burden substantially more speech than necessary to further a legitimate interest. *Ward* at 799. The regulation need not be the least restrictive means of serving the government's interest. *Id*. at 798.  A regulation is narrowly tailored so long as the interest would be achieved less effectively absent the regulation. *Id*. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

Augusta's concern with § 3-6-3 is protecting people who are seeking medical care from loud noises. It is well established that governments have a substantial interest in protecting citizens from loud and amplified noise. *Id*. at 796; *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806 (1984); *Kovacs v. Cooper*, 336 U.S. 77, 88 (1949). It is also well established that governments have an important interest in protecting patients in hospitals and medical facilities. *Pine v. City of W. Palm Beach*, 762 F.3d 1262, 1269 (11th Cir. 2014); *Medlin v. Palmer,* 874 F.2d 1085 (5th Cir. 1989).  As courts have stated, patients are often in particularly vulnerable physical and emotional

conditions, and noise control is particularly important during surgery and recovery periods. *Pine* at 1269

In *Pine*, the court considered a sound ordinance which stated that no person may shout or produce loud, amplified sound within 100 feet of a health care facility's property line. *Id*. at 1267; West Palm Beach, Fla. Code § 34-38(b). The court determined that the ordinance was narrowly tailored to advance the City's interest in protecting patients' health at health care facilities. *Pine* at 1273. The court noted that the ordinance "targets only actions near health care facilities that produce types of noise that can endanger patients." *Id*. at 1274. There were no less restrictive means because the heart of the problem was the loud noise. *Id*. Similarly, § 3-6-3 of the Augusta Code is narrowly tailored to serve Augusta's interest in protecting patients. Only loud noise in the vicinity of health care facilities is targeted to protect patients who are often in a vulnerable emotional condition. *See* Broadnax Dep. 48:1-12.

### c. Section 3-6-3 leaves open ample alterative channels for communication.

An ordinance leaves open ample alternative channels if it does not ban any manner or type of expression. *See Ward* at 802. With regard to prohibitions on amplified noise, adequate alternative channels are available if signs, literature, symbolic speech, and unamplified noise are not also prohibited. *See Pine* at 1274 (citing *Medlin v. Palmer*, 874 F.2d 1085, 1090 (5th Cir. 1989)). Section 3-6-3 does not prohibit unamplified speech, the distribution of written material, symbolic speech, or the use of signs near health care facilities. The noise ordinance also allows amplified speech that is not plainly audible near health care facilities. Thus, it leaves open robust alternative channels of communication.

In addition to *Pine*, courts in other circuits have found that regulations similar to § 3-6-3 are constitutional. *E.g.*, *March v. Mills*, 867 F.3d 46 (1st Cir. 2017); *Medlin v. Palmer*, 874 F.2d 1085, 1087 (5th Cir. 1989).   In *Medlin*, a Dallas ordinance prohibited the use of loudspeakers within 150 feet of certain medical facilities. *Medlin* at 1087.  The ordinance effectively banned a group of abortion protestors from using amplifiers on the sidewalks outside of abortion clinics. *Id*.  However, the protestors were free to picket, distribute literature, and speak without their bullhorns. *Id*. The court held that the ordinance was a valid time, place, and manner regulation that served a legitimate governmental purpose in protecting patients. *Id*. at 1090.  The court also noted that the ordinance left ample alternative avenues of communication. *Id*.  Just as the regulations in *Pine* and *Medlin* left ample alternative channels for communication, § 3-6-3 also allows Plaintiff and others to protest.  Therefore, because § 3-6-3 is a content-neutral regulation that is narrowly tailored to serve a significant government interest and leaves open alternative channels for communication, it does not violate the First Amendment.

**d.  Section 3-6-3 is constitutional on its face and as applied to Plaintiff.**

With an as-applied challenge to a time, place and manner restriction, a court's analysis should not focus on the factors only as they relate to the plaintiff but should take into account the regulation as a whole. *Funtana Vill., Inc. v. City of Pan. City Beach*, No. 5:15v282-MW/GRJ, 2016 U.S. Dist. LEXIS 10926, at *18 (N.D. Fl.  Jan. 28, 2016) (citing C*lark at* 296-7).  Thus, an as-applied challenge is similar to a facial challenge unless the facts of the as-applied challenge are so remote from the situation intended to be covered by the restriction.  *Id*. at *18-19.  On June 28, 2022, the RCSO received a complaint about loud noise at APWHC. Johnson Dep. 12:16-22; Whitehead Dep. 14:2-14. Lt. Paul Johnson investigated the complaint and determined that Plaintiff was in violation of § 3-6-3.

Exhibit G; Johnson Dep. 13:2-13.  He had probable cause based on video and statements from witnesses to believe Plaintiff violated § 3-6-3. Johnson Dep. 13:2-13; 41:13-24.  The RCSO has received numerous other complaints related to the volume of Plaintiff's protesting, and Plaintiff even admits to using an amplifier. Exhibit A, C; Doc. 1 ¶ 73, n. 4. Plaintiff's conduct of protesting outside of APWHC is clearly within the conduct to be regulated by § 3-6-3.  Further, Plaintiff cannot produce any evidence that the ordinance has been applied in any discriminatory manner.  Thus § 3-6-3 is a valid time, place and manner restriction facially and as applied to Plaintiff.

### 2.  Section 3-6-3 is neither vague nor overbroad.

A regulation is overbroad if its impermissible applications are real and substantial when judged in relation to the regulation's plainly legitimate sweep. *City of Chicago v. Morales,* 527 U.S. 41, 52 (1999) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)).  Overbreadth doctrine is concerned with the chilling effect a regulation could have on protected speech. *United States v. Dean*, 635 F.3d 1200, 1204 (11th Cir. 2011). However, invalidation for overbreadth is strong medicine and should be employed only as a last resort. *Id*. (citing *Broadrick* at 613).  A facial challenge based on overbreadth is generally only applied where an ordinance makes access to a forum contingent upon issuance of a license or where it gives enforcement officers overly broad discretion. *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1269 (11th Cir. 2007).  A plaintiff bears the burden of showing that the regulation is substantially overbroad from the text and from actual fact. *Id*. at 1270.  Here, Plaintiff cannot meet that burden.  The text makes clear that § 3-6-3 targets only loud noises near health care facilities.  As in *Pine*, § 3-6-3 does not go beyond targeting loud noise that could harm patients.  Section 3-6-3 has not

been utilized by Defendants to criminalize or chill any constitutionally protected speech. Thus, § 3-6-3 is not substantially overbroad.

Due process requires that laws not forbid or require doing an act in terms so vague that persons of common intelligence must necessarily guess at its meaning. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (2009).  An ordinance is vague if its prohibitions are not clearly defined.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). However, we can never expect mathematical certainty from our language. *Id. at* 110.  To establish that an ordinance is vague, a plaintiff must show that the ordinance fails to give fair warning of what constitutes wrongdoing or that it lacks objective enforcement standards. *Id.* at 109-10. Section 3-6-3 gives fair warning to those who may be affected as it clearly prohibits loud, amplified noise near health care facilities. *See Pine* at 1276.  The ordinance also provides clear standards for enforcement. *See DA Mortg*. at 1272 (holding that an ordinance regulating whether sound was "plainly audible at a distance of one hundred (100) feet from the building, structure or vehicle in which it is located" provided an objective standard).

With regard to any as-applied challenge, § 3-6-3 covers Plaintiff's conduct as he loudly preaches outside of an abortion clinic, and he has been cited for a violation under this section.  Plaintiff admits to using an amplifier, and multiple citizens have complained about Plaintiff's loud noise. Exhibit; Complaint ¶ 73, n. 4.  Thus, because § 3-6-3 unambiguously covers Plaintiff's conduct, the section is not vague as applied to him. *See United States v. Renfro*, 702 Fed. Appx. 799, 806 (11th Cir. 2017).  Therefore, § 3-6-3 is not vague or overbroad on its face or as applied.

**3.  Section 3-6-2 is constitutional.**

Plaintiff fails to explain why he believes that § 3-6-2 is unconstitutional, but seemingly takes issue with certain terms and the fact that the section regulates amplification.  Facial challenges are allowed under overbreadth and vagueness doctrines, but with regard to any other facial challenge, a plaintiff would need to establish that there are no circumstances under which the regulation could be valid. *DA Mortg.* at 1269. As Plaintiff has not been charged or cited under this section, Defendant assumes Plaintiff makes facial overbreadth and vagueness claims. *See* Doc. 1 ¶ 92.

Plaintiff cannot show that this section is substantially overbroad or delegates overly broad discretion to enforcement officers.  Plaintiff also cannot show that the section is vague.  It plainly describes prohibited loud noises.  It also provides distances from which loud noises should not be plainly audible, which are clear enforcement standards.  Much of the language such as "mechanical sound making devices" and "plainly audible" is borrowed from O.C.G.A. § 40-6-14, which has been upheld as constitutional by the Georgia Supreme Court. *Davis v. State*, 272 Ga. 818, 821 (2000) ("a statute's use of a standard that sound is 'plainly audible' at a set distance is not unconstitutionally vague.").  Furthermore, courts have upheld noise ordinances with nearly identical language. *DA Mortg.* at 1272 (finding that language in the Miami-Dade County ordinance that prohibited the operation of a sound reproduction device "in such a manner as to be plainly audible at a distance of one hundred feet from the building, structure, or vehicle in which it is located" was not vague); *Grady v. Unified Gov't of Athens-Clark County*, 289 Ga. 726 (2011) (holding that § 3-5-24(c)(2) of the Athens-Clark County Code, which is nearly identical to Augusta Code § 3-6-2, did not violate the Georgia Constitution that more broadly protects speech than the First Amendment).

### 4.  Section 3-6-1 is neither overbroad nor vague.

Plaintiff argues that to the extent that § 3-6-1 contains a prohibition, it is vague and overbroad. Doc. 1 ¶ 86(b).  Section 3-6-1(a) states that "It shall be unlawful for any person to make, continue or cause to be made or continued or permit to be made, continued or caused any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County."  Plaintiff cannot show that this subsection reaches substantially beyond the permissible scope of regulation. *See DA Mortg.* at 1270.  As argued above, Augusta has a significant interest in protecting its citizens from loud noises.  The section also gives fair warning that loud noises are prohibited.  Courts have upheld regulations with very similar language to § 3-6-1(a). *E.g.*, *Grayned* (holding that an ordinance that prohibited making any noise or diversion near a school which disturbs or tends to disturb the peace or good order of the school was not vague or overbroad.); *Kovacs v. Cooper* (holding that a Trenton ordinance that prohibited use of "a sound truck, loud speaker, or sound amplifier... which emits therefrom loud and raucous noises" was not vague.).

Subsection b provides the definition of plainly audible as "any noise or sound which can be heard by the auditory senses of a person standing at a distance no less than the distances set forth below from the sound."  Plaintiff cannot show that this section is substantially overbroad or that it fails to give fair warning.  The section simply provides a definition to aid in enforcement of the noise ordinance.  Regulations with similar language have been upheld. *E.g., Henderson v. McMurray*, 987 F.3d 997, 104 (11th Cir. 2021) (a noise provision prohibiting plainly audible amplified sound defined as sound that "can be heard inside an adjacent or nearby building by a person using his normal hearing faculties" was not vague); *DA Mortg. At* 1269-72 (holding that an ordinance which prohibited excessive noise including noise from a sound reproduction device

plainly audible 100 feet from the structure where the device was located was not vague or overbroad). Thus, § 3-6-1- is not overbroad or vague.

In sum, Plaintiff has not shown that any part of Ordinance 7782 is unconstitutional, and Plaintiff is not entitled to any injunctive relief.

### B. Plaintiff Fails To State A § 1983 Claim Against Defendants In Their Official Capacities.

Section 1983 provides a cause of action against "every person" who, under color of law deprives another of a constitutional right. 42 U.S.C. § 1983. Only persons are subject to liability under § 1983, and states are not persons within the meaning of this statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Similarly, the Eleventh Amendment bars suits in federal courts against a state or an arm of the state. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Sheriffs and sheriffs' deputies are arms of the state when acting in a law enforcement capacity such that suits against them in an official capacity are suits against the state. *Id.; Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003). *Temple v. McIntosh Cty*., No. 2:18-cv-91, 2019 U.S. Dist. LEXIS 10130 *12 (S.D. Ga. Jan 22, 2019). Investigatory stops and arrests are traditional law enforcement responsibilities during which sheriff's deputies act as arms of the state. *Townsend v. Coffee County*, 854 F.Supp. 2d 1345, 1352 (S.D. Ga. Aug. 9, 2011). Thus, sheriffs and their deputies acting as arms of the state are not subject to suit in their official capacity under § 1983. *See Howlett v. Rose*, 496 U.S. 356 (1990); *Bell v. Houston County*, 2006 U.S. Dist. LEXIS 43387, *35 (Ga. M. Dist. 2006).

Here, it is undisputed that Defendants were arms of the State of Georgia and were acting in a law enforcement capacity. For example, Deputy Smith was investigating a crime, and he ultimately arrested Plaintiff for criminal trespass. Exhibit E. Because

Defendants were arms of the state, they are not persons subject to suit in their official capacity under § 1983. Thus, Plaintiff fails to establish any official capacity claims against Defendants.

### C. Plaintiff Fails To Establish A Federal Claim Of False Arrest, False Imprisonment, Or Malicious Prosecution.

Plaintiff alleges that Sheriff Roundtree and Deputy Smith are liable for false arrest and false imprisonment under § 1983. It is assumed that Plaintiff is stating a claim of malicious prosecution under § 1983 as Plaintiff was arrested pursuant to a warrant. *Giles v. Manser*, 757 Fed. Appx. 891, 895 (11th Cir. 2018). Section 1983 false arrest and false imprisonment claims would not be appropriate as they are only viable for allegations involving warrantless arrests. *Jaudon v. Sasser*, No. 2:17-cv-118, 2020 U.S. Dist. LEXIS 8083, at *30-31 (S.D. Ga. Jan. 16, 2020). To establish a claim for malicious prosecution, a plaintiff must show a violation of the Fourth Amendment right to be free from unreasonable seizure, and he must show the elements of the common law tort of malicious prosecution. *Wood v. Kesler*, 323 F.3d 872, 881 (2003). The elements of the common law tort are: 1) a criminal prosecution instituted or continued by the present defendant, 2) with malice and without probable cause, 3) that terminated in the plaintiff accused's favor, and 4) caused damage to the plaintiff. *Id.* at 882.

### 1. Deputy Marlon Smith is entitled to qualified immunity.

Qualified immunity protects public officers engaged in discretionary functions unless they violate a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Taylor v. Taylor*, 649 Fed.Appx. 737, 742 (11th Cir. 2016). An officer acts within his discretionary function when he performs a legitimate job-related function through means that are within his power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citing *Hill v.*

*Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)).   Investigating crimes, obtaining warrants, and arresting subjects are discretionary functions. *Brock v. City of Zephyrhills*, 232 Fed. Appx. 925, 927-28 (11th Cir. 2007); *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990).  As Plaintiff alleges that Deputy Smith arrested him, it is undisputed that Deputy Smith was acting within his discretionary function.

Once a defendant shows he was acting within his discretionary authority, the Plaintiff has the burden of showing that qualified immunity does not apply. *Vinyard* at 1347.  Defendant does not dispute that it is a clearly established right under the Fourth Amendment that arrests must be supported by probable cause.  However, to establish a violation of the Fourth Amendment right to be free from malicious prosecution and overcome qualified immunity, a plaintiff must show that the defendant lacked arguable probable cause to arrest the plaintiff. *Taylor* at 743.  That is, a reasonable officer in the defendant's position would have known that he lacked arguable probable cause and should not have applied for the warrant. *Green v. Talley,* No. CV 416-285, 2017 U.S. Dist. LEXIS 80522, at *4 (S.D. Ga. 2017).

Here, an employee of APWHC witnessed Plaintiff on APWHC's property, and she provided video to Deputy Smith showing Plaintiff in the clinic's parking lot. Exhibit E; Smith body cam 00:50-01:28; Smith Dep. 35:3-16.  Deputy Smith obtained a warrant and arrested Plaintiff for criminal trespass. Exhibit E.  Georgia statute O.C.G.A. § 16-7-21(b)(1), provides that a person commits the offense of criminal trespass when he knowingly and without authority enters another's property.   Based upon the video and the employee's statement, Deputy Smith had at least arguable probable cause to believe that Plaintiff committed criminal trespass.  Thus, Deputy Smith is entitled to qualified immunity.

**2. Plaintiff fails to establish a prima facie case of malicious prosecution.**

The elements of the common law tort of malicious prosecution are: 1) a criminal prosecution instituted or continued by the present defendant, 2) with malice and without probable cause, 3) that terminated in the plaintiff accused's favor, and 4) caused damage to the plaintiff. *Wood* at 882. Malice is personal spite or general disregard of the right consideration of mankind, directed by chance against the plaintiff. *Ball v. Forsyth Cnty. Bd. of Comm'rs*, No. 2:15-cv-00099-RWS, 2015 U.S. Dist. LEXIS 78766, *17 (N.D. Ga. Jun. 17, 2015). Malice can be inferred if the defendant's acts were wanton, done with reckless disregard for the rights of plaintiff, or from want of probable cause. *Id.* (citing *Fleming v. U-Haul Co. of Georgia*, 246 Ga. App. 681 (2000)). Plaintiff has presented no evidence that Deputy Smith held any animus or personal spite toward Plaintiff. Deputy Smith was simply doing his job as he was dispatched to APWHC to investigate a call about trespassing. Smith Dep. 31:4-7; Exhibit E; Smith body cam.

Probable cause is established if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe the suspect has committed the offense. *Grider v. City of Auburn,* 618 F.3d 1240, 1257 (11th Cir. 2010). Deputy Smith viewed video of Plaintiff trespassing on APWHC's property. Thus, Deputy Smith had probable cause, and he did not act with malice. Plaintiff cannot establish the elements of the common law tort such that Plaintiff fails to establish a federal claim of malicious prosecution.

**3. Plaintiff fails to state a claim against Sheriff Roundtree for malicious prosecution.**

Plaintiff seemingly alleges that Sheriff Roundtree is liable for Plaintiff's arrest because he carried out a policy of harassment against Plaintiff. Supervisory liability under § 1983 occurs only when the supervisor personally participates in an unconstitutional act

or where there is a causal connection between the supervisor's actions and the alleged violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A causal connection can be established by showing a history of widespread abuse that the supervisor failed to correct or by showing a policy that results in deliberate indifference to constitutional rights. *Id*.  The standard by which a supervisor is held individually liable for an employee's conduct is extremely rigorous. *Cottone* at 1360. Furthermore, a supervisor is not liable if the plaintiff's rights were not violated by an employee. *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009).  As argued above, Deputy Smith had at least arguable probable cause to arrest Plaintiff for criminal trespass.  Because Deputy Smith did not violate Plaintiff's rights, Sheriff Roundtree cannot be liable for any malicious prosecution.

## D. Plaintiff Fails To Establish A Claim Of First Amendment Retaliation.

Plaintiff alleges that Captain Whitehead, Sheriff Roundtree, and others participated in a policy of harassment that caused Plaintiff to desist from constitutionally protected protesting. Doc. 1 ¶ 97.  To the extent that Plaintiff is alleging a first amendment retaliation claim, the plaintiff must show that 1) he engaged in constitutionally protected speech, 2) the defendant's retaliatory conduct adversely affected that protected speech, and 3) a causal connection exists between the defendant's conduct and the adverse effect on plaintiff's speech. *Bennett v. Hendrix* 423 F.3d 1247, 1250 (2005).  While Defendants do not dispute that Plaintiff engages in constitutionally protected speech, all of his activities are not protected.

### 1. Plaintiff cannot provide evidence of any retaliatory conduct by Defendants.

The retaliatory conduct must be based on a forbidden motive or animus toward the plaintiff. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).  Plaintiff cannot present any evidence that Defendants hold any animus toward Plaintiff or have ever sought to prevent

Plaintiff from protesting.  Defendants receive many complaints from citizens about the loud volume of Plaintiff's protests and about Plaintiff's trespassing, behaviors which are not constitutionally protected. Exhibits A, C.  Defendants and other RCSO officers have simply responded and interacted with Plaintiff in response to those complaints. Exhibit A.  Defendants' only interest is in having Plaintiff abide by the noise ordinance and all other laws while he protests.  Exhibit H.

### 2. Plaintiff cannot show that any retaliatory conduct adversely affected his speech.

Adverse action is harassment likely to deter a person of ordinary firmness from that exercise of First Amendment rights. *Bennett* at 1251.  With regard to Deputy Smith, his behavior cannot form the basis of any retaliation claim because he had probable cause to arrest Plaintiff.  The presence of probable cause generally defeats a § 1983 retaliation claim for a retaliatory arrest. *Duncan v. City of Sandy Springs*, No. 20-13867, 2023 U.S. App. LEXIS 14121, *13-4 (11th Cir. 2023).  With regard to Captain Whitehead, Plaintiff has not shown any retaliatory conduct by Captain Whitehead during the encounter. Police officers cannot harass or threaten arrest because of protected speech, but Plaintiff was not asked to stop protesting in retaliation for any protected speech.   Plaintiff was asked to leave APWHC because he was being loud in continuous violation of the noise ordinance. Whitehead Dep. 19:5-23.  Plaintiff had just been given a citation for violating the noise ordinance. Exhibit G.  As soon as officers left the scene Plaintiff resumed violating the noise ordinance.  Plaintiff was also displaying signs in violation of the zoning ordinance, which provides in § 28-B-5 that signs may not be attached to trees or utility poles in a right-of-way. Plaintiff had been warned multiple times about the signs. Exhibit A; Whitehead Dep.14:20-15:3.  Plaintiff can identify no other conduct by Defendants that has affected his protesting or that would deter anyone else from protesting.  Plaintiff has

been protesting in front of APWHC almost every day for several years. Doc. 1 ¶ 4. He is also often joined by other protestors, which is evidence that any alleged harassment has not and would not deter a person of ordinary firmness from further protesting. *See Bennett* at 1255;

Plaintiff alleges that various other tactics have been carried out by RCSO deputies. Doc. 1 ¶ 22. However, Plaintiff has not provided any specific dates or details such that the circumstances of his allegations are unclear. Plaintiff also had not alleged that any named Defendants were involved in most of the alleged instances as Plaintiff generally describes actions of "law enforcement." Allegations involving unnamed deputies do not establish a claim of retaliation. *Thompson v. Hall*, 426 Fed. Appx. 855, 859 (2011).

### 3. Plaintiff cannot show any causal connection.

The defendant's retaliatory motive must be the but-for cause of the adverse action. *Nieves* at 1722. If the defendant would have taken the same action in the absence of any protected activity, he is entitled to summary judgment. *O'Bryant v. Finch*, 637 F.3d 1207, 1217 (11th Cir. 2011). As Captain Whitehead testified, Plaintiff was asked to leave APWHC because he was continuing to violate several laws despite having received multiple warnings and citations. Whitehead Dep. 19:5-23. Captain Whitehead was not acting in retaliation or in response to Plaintiff's protesting.

With regard to Sheriff Roundtree, Plaintiff alleges that he created and approved of an alleged policy of harassment. Doc. 1 ¶ 22. A causal connection can be established for supervisory liability by showing a history of widespread abuse that the supervisor failed to correct or by showing a policy that results in deliberate indifference to constitutional rights. *Cottone* at 1360. The policy must be persistent, widespread, and the moving force that caused the constitutional violation. *Cuesta* at 967. Plaintiff must provide objective

evidence of a policy motivated by retaliation to survive summary judgment. *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018).  Plaintiff cannot produce any evidence of any such policy. Furthermore, a supervisor is not liable if the plaintiff's rights were not violated. Therefore, Plaintiff fails to establish a claim of first amendment retaliation.

### 4. Defendants are entitled to qualified immunity.

As Defendants were undertaking law enforcement duties when responding to calls for service at APWHC, they were acting within their discretionary authority.  Thus, Plaintiff has the burden of showing that qualified immunity does not apply to his retaliation claims.  Defendants have not violated a clearly established constitutional right of which a reasonable person would have known.  While Defendants do not dispute that it is clearly established that officers cannot harass someone in retaliation of protected speech, Defendants did not violate Plaintiff's rights or harass him.  A plaintiff can show that a right was clearly established by 1) pointing to materially similar case law, 2) pointing to a broad principle that would control the facts, or 3) by showing that the behavior was obviously unconstitutional based upon the text of a federal law. *See Terrell v. Smith*, 678 F.3d 1244, 1255 (11th Cir. 2012); *Lee v. Ferraro*, 284 F.3d 1188, 1198-99 (11th Cir. 2002).  Regardless of the method employed by a plaintiff, it must have been obvious that the defendant's conduct violated the plaintiff's rights. *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018).  If case law has not staked out a bright line, qualified immunity almost always protects the defendant. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (quoting *Priester v. City of Rivera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)).

Plaintiff cannot point to any case law that would put Defendants on notice that their behavior was unconstitutional harassment. The present case is unlike those detailed

in first amendment retaliation cases.  For example, in *Bennett*, the plaintiffs supported a Forsyth County referendum that would establish a county police force and diminish the power of the Forsyth County Sheriff's Department. 423 F.3d 1247, 1248-9. The plaintiffs alleged that the Sheriff and some of his deputies engaged in a campaign of harassment due to plaintiffs' support of the referendum. *Id.* at 1249.  The deputies allegedly surveilled the plaintiffs' homes and businesses, set up roadblocks near the plaintiffs' homes, issued false traffic citations, obtained confidential information from government databases, and mailed flyers to citizens calling plaintiffs criminals. *Id.*  The plaintiffs produced evidence of a prolonged and organized campaign of harassment by deputies in response to the plaintiffs' support of the referendum. *Id.* at 1254. Thus, the court determined that the defendants were not entitled to qualified immunity. *Id.* at 1256.

Here, the RCSO officers simply responded to calls for service from citizens. Plaintiff details one encounter each with Deputy Smith and Captain Whitehead which resulted from calls for service. Defendants were doing their job of policing the community and attempting to address a large volume of complaints that they receive related to Plaintiff's behaviors. Defendants and other RCSO employees understand that Plaintiff has every right to protest abortion. See Exhibit H. Plaintiff has produced no evidence that Defendants retaliated against Plaintiff because of his protesting.  Because Defendants are entitled to qualified immunity, Plaintiff fails to establish a claim of retaliation.

### E.  Plaintiff Fails To State A Claim For Failure To Train.

Plaintiff makes a failure to train claim against Sheriff Roundtree in alleging that he did not provide special training on enforcement of the new noise ordinance. Doc. 1 ¶ 98-99.  A supervisor can be held liable for a failure to train where the failure amounts to deliberate indifference to the rights of persons whom officers come into contact with and

the failure has actually caused an injury. *Keith v. Dekalb County*, 749 F.3d 1034, 1052 (11th Cir. 2014).  However, a supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Id.*  To establish a failure to train claim, a plaintiff must show that the supervisor had actual or constructive notice of a particular omission in training that causes employees to violate citizens' constitutional rights and the supervisor chose to retain the training program. *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To establish notice, a plaintiff can show a pattern of similar constitutional violations or widespread abuse by untrained employees. *Keith* at 1053.

Plaintiff cannot show that there was any particular omission in RCSO employees' training that causes employees to violate citizens' rights. RCSO deputies are required to complete basic peace officer training and on-the-job field training. Exhibit I.  Further, Sheriff Roundtree mandates 40 hours of annual training for officers, which is double the minimum requirement for police officers in Georgia. Exhibit I. O.C.G.A. § 35-8-21. Plaintiff cannot produce any evidence that this training is inadequate to equip officers with the ability to enforce all laws and ordinances.   The noise ordinance is not complicated.  It provides that loud noises are prohibited in certain locations and during certain hours.  There is nothing in the ordinance that would require any special training.

Even if there was some deficiency in the Sheriff's training program, Plaintiff cannot show that Sheriff Roundtree had notice that his employees were violating citizen's constitutional rights in enforcing the noise ordinance.   Plaintiff himself has not established any constitutional violation and he cannot provide evidence of a pattern of violations such that Sheriff Roundtree could not have had notice that officers needed special training.  Plaintiff has been cited under the noise ordinance one time and there is

no evidence that the citation violated any constitutional rights.  As explained above, Lt. Johnson had probable cause to believe that Plaintiff was being loud near a medical facility in violation of § 3-6-3.

The particular injury Plaintiff claims is that he was required to desist from protesting.  Plaintiff has alleged one instance on September 18, 2021 when he was asked to leave APWHC, but Plaintiff fails to explain how the lack of alleged special training on the noise ordinance has any relevance to that incident.  As explained above, Plaintiff was refusing to comply with the noise ordinance and zoning ordinance despite being warned repeatedly.  Further, even if this incident is considered a constitutional violation, it is but one incident and not indicative of a pattern.  Plaintiff has not otherwise been prevented from protesting nor has he presented evidence of a pattern that others have been prevented from protesting.  In fact, Plaintiff protests in front of APWHC every day.  Thus, Sheriff Roundtree had no notice that a particular omission in his training program was causing deputies to violate citizens' constitutional rights.

Additionally, Sheriff Roundtree is entitled to qualified immunity on Plaintiff's failure to train claim. Plaintiff cannot show that Sheriff Roundtree violated a clearly established constitutional right of which a reasonable person would have known.  Plaintiff cannot point to any case law that indicates that Sheriff Roundtree was required to provide any special training on enforcement of the new noise ordinance.  Therefore, Plaintiff fails to establish a claim of failure to train under § 1983.

**F. Plaintiff Fails To Establish A State Law Claim Of False Arrest Or False Imprisonment.**

Plaintiff alleges that Sheriff Roundtree and Deputy Smith are liable for false arrest and false imprisonment under state law.  Georgia recognizes the three related torts of false imprisonment, false arrest, and malicious prosecution, which each contain different

elements. O.C.G.A. § 51-7-1 *et seq*.  False imprisonment is an unlawful detention without judicial process. *Sheffield v. Futch*, 354 Ga. App. 661, 664-5 (2020) (quoting *McClendon v. Harper*, 349 Ga. App. 581, 585 (2019)).  False arrest is the unlawful detention under process of law, and malicious prosecution in an unlawful detention under process of law followed by prosecution. *Id*.  An arrest made pursuant to a warrant involves an arrest under process of law. *Id*. (quoting *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 240, 343 (2014)).  As Plaintiff was arrested pursuant to a warrant and he was not prosecuted, Plaintiff's allegations will be analyzed as a claim of false arrest. Exhibit E; Doc. 1 ¶ 43.

### 1. Defendants are entitled to sovereign immunity for Plaintiff's official capacity claims.

Sovereign immunity was officially adopted in Article I, Section II, Paragraph IX of the Georgia Constitution.  It bars all claims against the State including all of its counties and county officers. *Gilbert v. Richardson*, 264 Ga. 744 (1994).  A county's sovereign immunity extends to Sheriffs and their deputies. *Id*. at 746 n. 4. Georgia statute O.C.G.A. § 36-1-4 provides that a county's immunity is not waived for any cause of action unless authorized by statute.  Where sovereign immunity applies, a court lacks subject matter jurisdiction to hear the case. *Coosa Valley Tech. College v. West*, 299 Ga. App. 171, 174 (2009).  The burden is on the plaintiff to identify a waiver of sovereign immunity. *Id*. Because Plaintiff has not identified a waiver authorizing his claims, this Court has no jurisdiction to hear Plaintiff's official capacity state law claims against Defendants.

### 2. Deputy Smith is entitled to official immunity.

Official or qualified immunity shields government employees from personal liability unless they negligently performed a ministerial duty or performed a discretionary duty with malice. Ga. Const. Art. I, § II, ¶ IX; *Marshall v. Browing*, 310 Ga. App. 64, 67 (2011); *Gilbert v. Richardson*, 264 Ga. 744, 753 (1994).  A discretionary act is one that

calls for the exercise of personal deliberation and judgment. *Christen v. State*, 219 Ga. App. 10, 14 (1995).  Police officers who are investigating a case, obtaining warrants, and arresting suspects are acting within their discretionary authority. *Marshall* at 67.  Thus, there can be no dispute that obtaining a warrant and arresting Plaintiff were discretionary acts by Deputy Smith.

When a defendant shows that he was acting within his discretionary authority, the plaintiff has the burden of showing that the defendant acted with actual malice to defeat qualified immunity. *Adams v. Hazelwood*, 271 Ga. 414 (1999).  Actual malice is a deliberate intent to do wrong or injure. *Reed v. DeKalb County,* 264 Ga. App. 83, 87 (2003) (citing *Merrow v. Hawkins,* 266 Ga. 390, 392 (1996)).  Ill will alone is insufficient to establish actual malice. *Stephens v. Zimmerman*, 333 Ga. App. 586, 591 (2015).  Actual malice generally involves a personal animus toward plaintiff or use of manufactured evidence. *See Marshall* at 68.  Here, Plaintiff has not produced any such evidence of actual malice.  Plaintiff cannot show that Deputy Smith held any animus toward Plaintiff. Deputy Smith simply received information from a property owner that Plaintiff was trespassing, so he arrested Plaintiff for criminal trespass. Exhibit E.  Because Plaintiff has produced no evidence of actual malice, Deputy Smith is entitled to official immunity.

### 3. Plaintiff fails to establish a prima facie case of false arrest under Georgia law.

To establish a state law claim for false arrest, a plaintiff must show that he was maliciously arrested under process of law and without probable cause. O.C.G.A. § 51-7-1. Malice is a personal spite or general disregard of the right consideration of mankind, direct by chance at the plaintiff. O.C.G.A. § 51-7-2.   A lack of probable cause exists when the circumstances satisfy a reasonable man that the defendant had no ground for proceeding but his desire to injure the plaintiff. O.C.G.A. § 51-7-3.  While probable cause

is generally a question for the jury, a plaintiff must present some evidence of each element to raise a jury question. *Stanford v. City of Manchester*, 246 Ga. App. 129, 131 (quoting *Franklin v. Consolidated Govt. of Columbus*, 236 Ga. App. 468, 470 (1999)).

Plaintiff cannot present any evidence of malice or a lack of probable cause. Deputy Smith held no spite or animus toward Plaintiff. Plaintiff's arrest was initiated by the victim property owner where Plaintiff was trespassing. As argued above, it was reasonable for Deputy Smith to believe that Plaintiff trespassed based on the victim's statement and video. With regard to Plaintiff's claims against Sheriff Roundtree, Plaintiff has not alleged that the Sheriff was individually involved in his arrest. Plaintiff has only alleged that the Sheriff is liable for Deputy Smith's actions. Any such official capacity claims are barred by sovereign immunity as argued above. Thus, Plaintiff fails to state a claim for false arrest against Defendants.

### G. Plaintiff's Claims Against John Doe Defendants Constitute Improper Fictious Party Pleading.

Fictitious-party pleading is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is an exception where the plaintiff's description of the defendant is so specific and detailed to permit service of process. *DiPietro v. Medical Staff at Fulton County Jail*, 805 Fed. Appx. 793, 795 (11th Cir. 2020); *Richardson* at 738 (citing *Dean v. Barber*, 951 F.2d 1210, 1215-1216 (11th Cir. 1992)). Plaintiff alleges that John Doe Number One was in charge of the Charles B. Webster Detention Center. Doc. 1 ¶ 18. Plaintiff alleges that the other John Does participated in and carried out the Sheriff's policy of harassment toward Plaintiff. Id. ¶ 19. Discovery is closed and Plaintiff has not identified these unknown persons or attempted to add them as party defendants. Thus, any claims against John Doe Numbers One through Six should be dismissed.

## IV.    CONCLUSION

Based on the foregoing, Defendant fails to establish any claims against Defendants such that Plaintiff is not entitled to any relief or attorney's fees sought.   Summary judgment should be granted to Defendants.

This 15th day of August 2023.

/s/Tameka Haynes
**Randolph Frails**
Georgia Bar No. 272729
**Tameka Haynes**
Georgia Bar No. 453026

*Attorneys for Defendants*

**Frails & Wilson LLC**
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
Phone: 706-855-6715
Facsimile:  706-855-7631
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the within and foregoing **Defendants' S****tatement of Undisputed Materials Facts, Defendants' Motion for Summary Judgment, and Brief in Support of Defendants' Motion for Summary Judgment** were served upon the following parties in accordance with ECF rules by electronically filing a copy with the Clerk of Court using the CM/ECF system, by email, or by depositing a copy in the United States Mail with adequate postage thereon to:

Charles C. Stebbins, III
Robert P. Mangum
Turner Padget Graham & Laney, P.A.
PO Box 1495
Augusta, GA 30903
cstebbinsiii@turnerpadget.com
rmangum@turnerpadget.com

This 15th day of August 2023.

/s/Tameka Haynes_____
**Randolph Frails**
Georgia Bar No. 272729
**Tameka Haynes**
Georgia Bar No. 453026

*Attorneys for Defendants*

**Frails & Wilson LLC**
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
Phone: 706-855-6715
Facsimile:  706-855-7631
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com