Subject:  smith v roundtree privilege log and claims

Date:     9/15/2023 2:56 PM

From:     "Stebbins, Charles C" <CStebbins@TurnerPadget.com>

To:       "Randolph Frails" <randyfrails@frailswilsonlaw.com>, "Tameka Haynes"
          <thaynes@frailswilsonlaw.com>

---

Randy and Tameka:

It's pretty hard, at least for me, to understand the whole matter of what messages you have withheld as privileged, so I thought it might be good to send you some questions ahead of our telephone conference at 3:30:

1.  My memory of our telephone conference with Judge Epps is that Randy said that in all there were only 10 messages (or maybe he said 12, I'm not quite sure) and that these were just repeated a number of times. Your augmented privilege log contains 32 entries, I believe? Can you indicate for me which of these are duplicates of which, so that I can understand what the ten or 12 messages that were withheld are? I assume that some of them were forwarded to different people. If I knew which were which, I could understand which messages were forwarded to whom.

2.  I believe from our conference with Judge Epps that some things that you may have added to the augmented privilege log would be messages that didn't appear at all on the previous privilege log. Is that the case, and if so, can you identify which these are?

3.  Based on what Tameka sent me about the Command Staff, I think that all the messages that went out to the Command Staff, or were forwarded to the Command Staff, went to people who would have had no need to know anything about either my client, any incidents at the abortion facility, or the enforcement of either the old ordinance or the new ordinance, so I think it is obvious that the privilege has been waived as to any of these messages. Can you tell me how many different messages are involved in those that went or were forwarded to the Command Staff, and which dates on your privilege log involve any sending or receiving of these Command Staff messages? It seems that some of the Command Staff messages were sent in batches. I know that Judge Epps said that he didn't think sending a message to the Command Staff would waive the privilege, but I believe he will change his mind when he sees who was among the Command Staff.

4.  In that regard, Tameka said that it would be a lengthy process to figure out who was part of the Command Staff at the times of the various messages. I don't have any desire to put y'all to any extra work that is not needed to resolve the privilege question. Can I assume that y'all will agree that, as to the positions shown on the website page that Tameka sent me a link for, the people holding those positions at the time of the various emails would have been recipients of the Command Staff messages? I think that would make it a lot easier for the Court to understand the functions of the people who received the messages. If you consider that somehow everybody in the Command Staff had a need to know the contents of the messages sent to the Command Staff that you contend are privileged, will you explain for each such person what his need to know would have been?

5.  Exchanges between Tameka and  Kimberly Lee appear to have been confined to those persons and not forwarded to anybody else. Is that correct? If so, and if Kimberly Lee is someone who works in your records area, then I understand the claim of privilege as to communication between her and Tameka.

6. What are Sgt. Caleb Lees' duties?  Exchanges on August 1, and June 23, 2022 seem to have been only between Tameka and Sg. Lee?  Is that correct?  I don't understand how Sgt. Lee would have had a need to know about both Open Records Act requests and about matter concerning the ordinances and their enforcement.   It seems that one of these two areas would have been outside his responsibilities, so as to make communications about it outside of the privilege.

7. I understand the claim of privilege as to any messages that were distributed on ONLY among Sheriff Roundtree, Tameka, Randy and Chief Clayton, but since your augmented privilege log does not show which messages involve the forwarding of these, if any, I don't know which ones to count in that category

8. I understand the claim of privilege as to the communications between Mr. Wynder and Mr. Wayne Brown or Mr. Samuel Meller or both.  Were any of these forwarded or copied to anybody else?  Again, I can't tell from your augmented privilege log.

9. On your original privilege log, the second entry for March 19, 2020 shows a message going from Chief Clayton to Randy and to Mike D'Amico, but also to Sheriff Roundtree and Amelia Lamkin.  On your new privilege log, this shows as only going to Randy and Mike D'Amico.  What is the reason for this change on your augmented privilege log?

10. Are y'all able to represent that the entries on your augmented privilege log include all of the pages that I submitted as an exhibit to my motion?

11. II'm confused because your privilege log refers to Amelio R. Lamkin.  Is that the same person as Ramone Lamkin?

I've been working hard to figure out if there's a way from your privilege log and the materials you sent to link larger number to just 10 or 12 different messages.  If I could do that, I could understand which of the redacted messages went to whom at any time.  This would allow me to see whether all the people who received the messages had a need to know their contents.  This seems to me to be the real question about these redactions and the privilege.

Clay



Charles C Stebbins
Of Counsel
PO Box 1495 | Augusta, GA 30903
209 7th Street, 3rd Floor | Augusta, GA 30901
706-941-3404 | Fax
cstebbins@turnerpadget.com
Bio | vCard | Location