IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| STEVEN SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:22-cv-00149 |
| | ) | |
| AUGUSTA-RICHMOND COUNTY, | ) | |
|   GEORGIA; RICHARD | ) | |
|   ROUNDTREE, individually | ) | |
| and in his official capacity as | ) | |
| Sheriff of Richmond County, | ) | |
| Georgia; DEPUTY MARLON | ) | |
| SMITH, individually and in his | ) | |
| Official capacity as a sworn | ) | |
| Officer of the Richmond County | ) | |
| County Sheriff's Office; | ) | |
| Sheriff's Office; LIEUTENANT | ) | |
|  DANNY WHITEHEAD, | ) | |
| Individually and in his official | ) | |
| capacity as a sworn officer of the | ) | |
| Richmond County Sheriff's Office | ) | |
| and JOHN DOE DEFENDANTS | ) | |
| ONE THROUGH SIX, presently | ) | |
| unidentified to Plaintiff, each of | ) | |
| whom is sued individually and in | ) | |
| his capacity as a sworn officer | ) | |
| of the Richmond County Sheriff's | ) | |
| Office, | ) | |
|     Defendants. | ) | |

**PLAINTIFF'S RENEWED MOTION PURSUANT TO COURT ORDER
OF FEBRUARY 9, 2024
AND
PLAINTIFF'S RESPONSE TO ORDER OF FEBRUARY 9, 2024**

The Court's Order of February 9, 2024, upholding the Magistrate Judge's conclusion that Defendants' attorney-client privilege has not been waived as to certain emails, contains an unusual provision. The Court has directed that Defendants shall obtain an affidavit from Defendant Richard Roundtree, addressing three specific topics relevant to Plaintiff's claim of waiver of

1

privilege.  The Court further directs that this affidavit, although apparently not to be filed as part of the Record in this case, is to be emailed to Plaintiff's counsel, who within 14 days "may file a renewed motion if the affidavit contains information that provides a good faith basis for claiming waiver under the legal analysis [in the Order] and in the Magistrate Judge's Order on appeal."  The Court then states that the Magistrate Judge will consider any such motion.   Order of February 9, 2024 (the "Order"), Document 69, pp. 5-6.

Plaintiff approaches a response to the Order with some trepidation, because Plaintiff finds it unclear what standard he is to apply in determining whether he should file a renewed motion. Plaintiff has no wish to violate the Court's Order or to prolong proceedings in this case unnecessarily.  The Sheriff's Affidavit contains no affirmative new information that would support Plaintiff's claim of waiver.  It would be surprising if it did, since there would be no reason to suppose that the Sheriff would submit information that would damage his claim.  The Sheriff has been invited to support his claim and then Plaintiff has been invited to find something in the Sheriff's response that supports the opposite conclusion.  Thus, if the Court's Order is taken to mean that Plaintiff is authorized to file a renewed motion only if the affidavit "contains [affirmative] information that provides a good faith basis for claiming waiver", then it would appear that Plaintiff should not do so.  In that case, Defendants have been invited to buttress the Magistrate Judge's decision with material not in the Record when the Magistrate made his ruling, but under circumstances that virtually preclude any further effort by Plaintiff.  On the other hand, if the Sheriff's Affidavit is judged by what it does *not* contain, then it seems that a response from Plaintiff would be appropriate, since the Affidavit only underscores and demonstrates that Defendants have not met their undoubted burden of proof to show that all who received the emails at issue had a "need to know" their content.  Furthermore, it seems to Plaintiff that the Court surely

2

did not intend to allow one side to buttress its argument with supposedly new evidence, while not allowing Plaintiff at least to discuss this new material even if it supposedly benefits only Defendants.

What the Sheriff has done by affidavit is simply to restate under oath, with his *ipse dixit* alone, the alleged information upon which the Magistrate Judge relied. The deficiencies and failures of the Sheriff's Affidavit, as described below, are themselves a good faith basis for Plaintiff's claim of waiver of the privilege, even though this good faith basis proceeds from an evaluation, not of what the affidavit does contain, but what it conspicuously does not contain. It is on this basis that Plaintiff's counsel considers himself bound to file a renewed motion, and a specific "Response" to the Court's Order.

Because the Magistrate Judge is apparently to consider the content of the Sheriff's Affidavit if Plaintiff files a renewed motion, and because the Order states that its directions as stated above are "to ensure a full and complete record", Plaintiff attaches hereto a copy of the Sheriff's Affidavit as Exhibit "A". The original is presumably in the possession of Defendants' counsel, and Plaintiff hereby requests that Defendants' counsel file the original as part of the Record in this case. Plaintiff wishes also to note that the Sheriff's Affidavit contains statements that are not subject to cross-examination, because this entire controversy arose only after the close of discovery in the case. The reason for this is that, during the discovery period, Defendants failed to identify the emails in question and failed to provide any privilege log. Plaintiff further notes that at no time has the Magistrate Judge actually reviewed the emails in question, even *in camera,* as Plaintiff had sought to be done.

## BACKGROUND

Plaintiff respectfully submits that in considering this renewed motion, it is important to keep in mind the underlying situation which has resulted in Plaintiff's claim of waiver, in light of the evidence of record. An outstanding issue in this case is the extent to which Defendant Sheriff Roundtree can be implicated personally in the campaign of harassment conducted against Plaintiff over a period of years, with its resultant deprivations of liberty and violations of constitutional right. A key question is the extent to which the Sheriff was personally aware of the ongoing controversy between officers of the Richmond County Sheriff's Office (the "RCSO") and Plaintiff, or of the complaints made to various officers by Mr. Thomas Burnside. These complaints from Mr. Burnside were so frequent, and the determination of RCSO officers to "shut down" Plaintiff's protests so strong, that during one particular period of indefinite length, officers of the RCSO were directed by their superiors to visit the Abortion Facility location every hour on the hour, even in the absence of a particular complaint, apparently to see if Plaintiff could be caught doing something wrong. In this regard, see the emails identified by Patrick Clayton, the Sheriff's Chief Deputy, in his deposition exhibits 2-7, as attached as Exhibit 2 (Document 68-2) to Plaintiff's Objection to the part of the Magistrate Judge's ruling now at issue (Document 68) and in particular Exhibit 7. In this Exhibit 7 (copy attached hereto as part of Composite Exhibit B), Mr. Burnside complains and Chief Deputy Clayton forwards this complaint to one of his subordinates, who in turn issues an order that "effective immediately [June 21, 2022]. . every hour we need to do an area check of this location during business hours. Make sure we go out over the radio to document in order to document that we are checking it. . . and remember they also are recording any incidents with law enforcement . . ." Chief Deputy Clayton testified that he kept Sheriff Roundtree informed "about law enforcement problems that have come up in your division" "probably every day". Clayton

4

Deposition, pp. 4-5. Yet at his deposition on June 30, 2023, Chief Deputy Clayton, while admitting the possibility, could not remember whether he had ever discussed Plaintiff or problems at the Abortion Facility with Sheriff Roundtree. *Id.,* pp. 49-50. And Sheriff Roundtree on the same day testified without qualification that he had never heard of problems at the Abortion Facility before the filing of the present lawsuit and had never discussed any such problems with Chief Deputy Clayton. Roundtree Deposition, p. 9. Copies of all this material are attached hereto as Composite Exhibit B. Together they surely show the great importance of any email received by Sheriff Roundtree that may bear on this situation. Plaintiff can think of no reason that the emails at issue would have been identified even in Defendants' tardy privilege log, unless they bear on this situation.

Plaintiff bases his claim of waiver of privilege on two disclosures by Defendants and their subordinates: (1) on the disclosure of the withheld emails to all members of Sheriff Roundtree's so-called "Command Staff", and (2) on the disclosure of the withheld emails to other RCSO employees. In neither case have Defendants carried their burden of proof that these persons had a "need to know" of the content of the emails. Because the disclosure to persons who were not members of the "Command Staff" is simpler to explain, and since Defendants' failure to carry their burden of proof in this case is clearer, Plaintiff discusses it first.

<u>LOSS OF PRIVILEGE THROUGH COMMUNICATION
OF THE ALLEGEDLY PRIVILEGED EMAILS TO
MESSRS. WALTER ASHLEY, CHAD MALLIS,
TRACY CARTER, WILLIAM McCARTY
AND CALEB LEE</u>

The clearest evidence that the emails at issue were not distributed only to persons with a need to know their contents is the inclusion of persons who were not even members of the Sheriff's so-called Command Staff. The pertinent portion of the Court's Order in this regard required the

Sheriff to swear to the job duties of six recipients of the forwarded emails at-issue, and whether those job duties concerned the noise ordinance, particularly enforcement duties. Rather than fairly meeting the substance of the Court's Order, the Sheriff's affidavit simply states that "Walter Ashley, Jeff Johnson, Chad Mallis, Tracy Carter, William McCarty, and Caleb Lee were certified officers who must be knowledgeable about all RCSO policies related to ordinance enforcement as they could be called to respond or assist on any calls." Affidavit, Paragraph 13. The problem with this statement is obvious: if one merely needs to be a certified officer to invoke the attorney-client privilege at the Sheriff's Office, then nearly all personnel save desk staff would be entitled to all attorney-client privileged information circulated by counsel for the Sheriff. Respectfully, this simply cannot be the law. The fact that the most the Sheriff is willing to swear to is that, vaguely, their job responsibilities *could* require them to respond to noise complaints should be found insufficient by the Court. The Sheriff's affidavit makes it clear he cannot affirmatively swear that these six persons' job duties actually relate to noise ordinance enforcement, and for the Court to countenance this affidavit as sufficient evidence of their job responsibilities would effectively extend privilege as to all matters to all certified officers, regardless of rank or responsibility. This sort of blanket claim makes a mockery of the requirement that to preserve the attorney-client privilege communications from lawyers cannot be distributed broadcast, but must be limited to persons with a real (not imaginary or conceivable) need to know their contents. The Sheriff's unsurprisingly self-serving affidavit, rather than truly complying with the Court's Order, instead lays bare the continued attempt by the Sheriff to create a blanket privilege as to all personnel at the Richmond County Sheriff's Department. This is plainly not permitted by law.

<u>LOSS OF PRIVILEGE THROUGH COMMUNICATION TO "COMMAND STAFF"</u>

As to the Sheriff's "Command Staff", the Order directs that the Sheriff in his affidavit address "the purpose, authority, and function of the Command Staff as an executive body, including whether the Command Staff has any role with respect to consideration of county ordinances or Sheriff's Department policies, procedures, and/or operations." Sheriff Roundtree attempts to respond to this requirement in paragraphs 2 through 10 of his Affidavit.

Paragraphs 2 through 9 of the Affidavit consist of general assertions such as that all Command Staff members attend regular meetings at which "enforcement issues related to ordinances", etc., are discussed, all are "expected" to be "knowledgeable" about enforcement matters and "to contribute ideas to these discussion whether the issues directly affect their division or not", and that "divisions [of the RCSO] do not operate in a vacuum." These assertions appear to operate on the assumption that the current "need to know" standard for the waiver of privilege question merely absorbed and extended the old "control group" standard, whereas in fact *Upjohn* replaced the old "control group" standard with a more specific and individually tailored one. In short, they seem to operate on the view that if a person is designated by an organization as in some way a part of upper management, then it is unnecessary to understand, in order to determine whether the privilege has been waived, whether that person actually had a need to know the allegedly privileged information in order to fulfill his actual, rather than merely possible or conceivable, job responsibilities. There is no authority for such a view of the matter in reported cases since *Upjohn*.

Only in paragraph 10 of his Affidavit does the Sheriff make specific representations as to how it is that all Command Staff members "must be concerned about overall operations". These are that "members" of the Command Staff (and note that the Sheriff does not say this of *all* members of Command Staff) "alternate being the on-call supervisor during night and weekend

7

shifts during which they may have to respond to and supervise incidents related to any division of the RCSO." He continues in this paragraph attempting to show that "members" of the Command Staff (and again, he does not say "all" members) may, because of "ongoing labor shortages" or for other reasons, have to supervise law enforcement. This is one in particular of the areas of the Affidavit to which Plaintiff cannot adequately respond without the opportunity for cross-examination.

What the Sheriff conspicuously does not say in his affidavit is that the particular members of Command Staff who were identified by Plaintiff as not having been shown to have a "need to know" have ever alternated as on-duty supervisors for the night shift or on weekends, or that they have at any time actually supervised officers actually engaged in law enforcement, that is, the proverbial "cops on the beat". Had this been the case, it would have been easy enough to say so. Frankly, it is not credible that in a professional law enforcement organization of the size of the RCSO such duties of supervision of line enforcement officers, even on a weekend or night-time basis, or because of "staffing shortages", would be delegated to the person who directs the "resiliency and wellness center" for the RCSO, or to the "finance director" of the RCSO, for instance. Plaintiff should be entitled to cross-examination of these persons and others mentioned in Plaintiff's Brief of January 23, Document 68, as well as the Sheriff himself and other persons within the Command Staff, to determine whether they have ever *in fact* supervised line officers or done any of the other things that the Sheriff asserts are done by "members" of his Command Staff. If not, then there is no showing that these persons would have a "need to know" (not an opportunity to know) what advice the Sheriff may have received from his counsel concerning law enforcement in this context.

CONCLUSION

The Magistrate Judge's decision turns the law regarding waiver of the attorney-client privilege through disclosure on its head. As to the disclosure to all Command Staff" members, it allows vague statements as to the participation of various individuals in the high-level management of the RCSO to replace individualized evidence that such management persons had an actual need to know of the information communicated from counsel to Sheriff Roundtree in this case. As to non-members of the Command Staff, it allows the mere fact that such persons are sworn law enforcement officers and thus could or might some day be called to accomplish enforcement duties to replace individualized evidence that in the present case such officers had a need to know what counsel may have told Sheriff Roundtree. Both these standards lose sight of the overall meaning of the waiver of privilege doctrine, which is that if attorney-client communications are not kept appropriately confidential, they lose their privileged status. a

As demonstrated in Plaintiff's prior briefs, where the question of waiver is raised, it is clear that the proponent of the privilege has the burden of proof that it has not been breached. As to the disclosure to all members of Sheriff Roundtree's "Command Staff", regardless of their position in the management of the RCSO, of whatever it is that Sheriff Roundtree's counsel told him by email, the assertions of Sheriff Roundtree's Affidavit do not show that this disclosure does not waive the privilege. The statements made in Sheriff Roundtree's Affidavit do not carry Defendants burden of proof in this regard. Even if they did so as to Command Staff members, they have not done so as to the dissemination of this allegedly privileged material to the other, non-management officers discussed above.

Because of the possible evidentiary value of this evidence, Plaintiff respectfully renews his request that the Magistrate Judge or the Court at least review the emails at issue *in camera.* In an effort to reduce the volume of paperwork generated by this controversy, Plaintiff also respectfully requests that the Magistrate Judge, if he does revisit his conclusion, refer to Plaintiff's Objection with exhibits, filed January 23, 2024 as Document 68. Plaintiff does not waive his contention that the Magistrate Judge's conclusion is clearly erroneous on both the facts and the law, whether judged on the Record on which the Magistrate Judge rested his conclusion, or on the expanded Record which has resulted from Defendants' purported compliance with the Court's Order of February 9, 2024.

Plaintiff recognizes that the Court has found that the Magistrate Judge's order "is not clearly erroneous or contrary to law", and that the Court has reached its conclusion on the basis of the information available to the Magistrate Judge and the Magistrate Judge's order alone, without the need to consider the further information contained in the subsequent Sheriff's Affidavit. For these reasons, the Sheriff's affidavit is insufficient to show that the privilege was claimable by these persons, and Plaintiff thus does not waive his contention that the Magistrate Judge's Order is clearly erroneous and contrary to law, for the reasons Plaintiff has previously argued, based on the entire record before the Court. Plaintiff does not waive his contention that the Magistrate Judge's conclusion is clearly erroneous on both the facts and the law, whether judged on the Record on which the Magistrate Judge rested his conclusion, or on the expanded Record which has resulted from Defendants' purported compliance with the Court's Order of February 9, 2024.

TURNER PADGET GRAHAM & LANEY, P.A.

/s/ Charles C. Stebbins, III
Charles C. Stebbins, III
Georgia Bar No.: 677350
Robert P. Mangum
Georgia Bar No.: 268222
PO Box 1495
Augusta, GA. 30903
(706) 722-7543
cstebbinsiii@turnerpadget.com
rmangum@turnerpadget.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

COMES NOW, the undersigned attorney for Steven Smith, Plaintiff in the above-captioned case, and certifies that on March 8, 2024 he electronically filed the foregoing **PLAINTIFF'S RENEWED MOTION PURSUANT TO COURT ORDER OF FEBRUARY 9, 2024 AND PLAINTIFF'S RESPONSE TO ORDER OF FEBRUARY 9, 2024** with the Clerk's electronic filing system, which will automatically provide service to all counsel of record as follows:

> Frails & Wilson, LLC
> Tameka Haynes
> thaynes@frailswilsonlaw.com

/s/ Charles C. Stebbins, III