IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| STEVEN SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:22-cv-00149 |
| | ) | |
| AUGUSTA-RICHMOND COUNTY, | ) | |
|   GEORGIA; RICHARD | ) | |
|   ROUNDTREE, individually | ) | |
| and in his official capacity as | ) | |
| Sheriff of Richmond County, | ) | |
| Georgia; DEPUTY MARLON | ) | |
| SMITH, individually and in his | ) | |
| Official capacity as a sworn | ) | |
| Officer of the Richmond County | ) | |
| County Sheriff's Office; | ) | |
| Sheriff's Office; LIEUTENANT | ) | |
|   DANNY WHITEHEAD, | ) | |
| Individually and in his official | ) | |
| capacity as a sworn officer of the | ) | |
| Richmond County Sheriff's Office | ) | |
| and JOHN DOE DEFENDANTS | ) | |
| ONE THROUGH SIX, presently | ) | |
| unidentified to Plaintiff, each of | ) | |
| whom is sued individually and in | ) | |
| his capacity as a sworn officer | ) | |
| of the Richmond County Sheriff's | ) | |
| Office, | ) | |
|     Defendants. | ) | |

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S
ORDER OF MARCH 11, 2024,
DENYING PLAINTIFF'S RENEWED OBJECTION TO A
PORTION OF THE MAGISTRATE JUDGE'S ORDER OF JANUARY 9, 2024**

Pursuant to Federal Rule of Civil Procedure 72(a) and this Court's Local Rule 72.2, and pursuant to this Court's Order of February 9, 2024 (Document 69 herein), Plaintiff hereby objects to the Magistrate Judge's Order of March 11, 2024 (Document 71), and thereby renews his objection to Section II(A) of the Magistrate Judge's Order issued January 9, 2024 (Document 67).

Plaintiff takes this step only with considerable trepidation, in view of the direction of this Court in its February 9 Order that Plaintiff shall take further action only if the affidavit from Sheriff Roundtree that the Court required in its Order "contains information that provides a good faith basis for claiming waiver under the legal analysis [in the Order] and in the Magistrate Judge's Order on appeal." Order of February 9, 2024, Document 69, pp. 5-6. Plaintiff readily concedes that the Sheriff's Affidavit, which Plaintiff has made a part of the Record herein by attaching it as an exhibit (Document 70-1) to Plaintiff's Renewed Motion (Document 70), does not itself contain any affirmative information that would provide a good faith basis for claiming waiver. It would be surprising if it did, since there would be no reason to suppose that the Sheriff would submit information that would damage his claim. The Sheriff has been invited to support his claim and then Plaintiff has been invited to find something, if he can,

in the Sheriff's response that supports the opposite conclusion. If the Court's Order is taken to mean that Plaintiff is authorized to file a renewed motion only if the affidavit "contains [affirmative] information that provides a good faith basis for claiming waiver", then Plaintiff should not do so.

On the other hand, if the Sheriff's Affidavit is judged by what it does *not* contain, then an objection from Plaintiff is highly appropriate, because the Affidavit only underscores and demonstrates that Defendants have not met their undoubted burden of proof to show that all who received the emails at issue had a "need to know" their content. It seems to Plaintiff that the Court surely did not intend to allow one side to buttress its argument with supposedly new evidence, while not allowing Plaintiff at least to discuss this new material even if it supposedly benefits only

Defendants.  Plaintiff presents this point first in the present Objection, so that if Plaintiff has reached the wrong conclusion in this regard, the Court will be spared another look at the issue.

In brief, what the Sheriff has done by affidavit is simply to restate under oath, with his *ipse dixit* alone, the alleged information upon which the Magistrate Judge relied in the first instance, before the Court's Order of February 9.  The deficiencies and failures of the Sheriff's Affidavit, as described below, are in themselves a good faith basis for reconsideration of Plaintiff's claim of waiver of the privilege, even though this good faith basis proceeds from an evaluation, not of what the affidavit does contain, but what it conspicuously does not contain.  It is on this basis that Plaintiff's counsel considers himself bound to file this renewed Objection.

According to the Order of February 9, the Affidavit should contain (1) an explanation of the "Command Staff's" "purpose, authority and function", including its role "with respect to "Sheriff's Department policies, procedures, and/or operations" and (2) whether the six recipients of the forwarded email [persons not part of the "Command Staff"] have job duties concerning the noise ordinance such as enforcements duties."  The Affidavit fails of its purpose in both respects, and its failure illustrates why the attorney-client privilege has been waived as to the subject emails, and why the Magistrate Judge's renewed conclusion remains clearly erroneous as a matter of law and fact.  To avoid duplication and multiplication of paper, Plaintiff respectfully refers to his Renewed Motion (Document 70) and its exhibits as filed, but this brief is confined to issues raised by the deficiency of the Affidavit and properly the subject of objection to this Court.

Before proceeding to discuss the deficiencies of the Affidavit, Plaintiff considers himself obliged to address another preliminary issue bearing on his present objection, which has been presented just this morning by the arrival of an Order of the Court which among other things grants summary judgment to Sheriff Roundtree as a Defendant in this action.  Considering the very high

3

standard which the Eleventh Circuit has set for finding a supervisory officer such as Sheriff Roundtree liable under 42 U.S.C. Section 1983, Plaintiff considered himself bound to concede, in briefing on this summary judgment issue last September, that the quantum of evidence he has been able to gather as to Sheriff Roundtree's connection to what Plaintiff believes is a clear pattern of harassment against him, is insufficient to hold Sheriff Roundtree liable under Section 1983. As will appear below, Plaintiff believes that the redacted material which has been withheld on attorney-client privilege grounds, and to which Plaintiff seeks access in his present objection, might *possibly* change this calculus. Should this Court change its mind, as a result of the present objection, as to whether Plaintiff should gain such access, then it is possible that the contents of the emails would be of such a nature as to raise the evidence of Sheriff Roundtree's involvement with actions against Plaintiff as to meet even the Eleventh Circuit's exacting requirements. Plaintiff would then have grounds for asking for reconsideration of the Court's ruling on summary judgment for Sheriff Roundtree. This is a matter that cannot be considered as more than a possibility unless the content of the redacted emails becomes known.

If after having seen the contents of the redacted emails, Plaintiff wished to make such a request for reconsideration of the summary judgment granted to Sheriff Roundtree, he would be faced with formidable obstacles. Perhaps he has been fatally remiss in failing to notify the Court that this possibility exists, since a motion for summary judgment has been pending for some time. Nevertheless, he believes that he should take the step of filing the present objection, so as to avoid waiver of his argument in this regard if possible. The issue would arise only if Plaintiff were to be successful in the present objection, and then only if the content of the redacted emails turns out to be relevant to the question of Sheriff Roundtree's knowledge of and involvement in actions

against Plaintiff. Plaintiff simply cannot know, without knowing what is in the emails, whether this possibility, which is in his judgment at least likely, will develop into a sustainable argument.

　　*1. Context of the present dispute*

The contents of the emails which have been redacted may be of crucial importance in this so far as the liability of Sheriff Roundtree himself, as supervisor of his deputies, is concerned. Of course, neither Plaintiff nor the Magistrate Judge has actually seen the contents of the emails, which have not been reviewed *in camera* as urged by Plaintiff. Plaintiff can therefore only conjecture as to what they may say. However, it is reasonable to suppose that they may contain information relating to the ongoing and contentious effort of the Sheriff's Department to use the noise ordinance and other provisions against Plaintiff, including the long series of harassments against Plaintiff. There was surely a reason that these emails were identified by Defendants in response to discovery, even though their content was kept hidden. They must be in some way relevant to the issues in this case, and it is not unlikely that they contain comments of some kind by Sheriff Roundtree to his subordinates about the matter.

In their summary judgment brief (Document 43-1), Defendants have argued that there is not sufficient evidence to find Sheriff Roundtree personally liable under Section 1983, based on the existing standard established by the Eleventh Circuit for the liability of a supervisory official. Plaintiff has frankly conceded (Plaintiff's Brief in Response to Summary Judgment Motion, Document 53, p. 47) that this is so. Plaintiff has some evidence pointing to such liability, and this evidence will in his opinion be admissible at trial for other purposes, but Plaintiff, if he is to prevail on the question of personal liability of Sheriff Roundtree under Section 1983, will have to do so by persuading the Eleventh Circuit that it has set the bar too high for such a claim under the

circumstances of this case. This Court is of course bound by the standard set out clearly by the Eleventh Circuit, so that there is no point in arguing the issue here.

If as Plaintiff suspects the redaction conceals evidence showing knowledge of Sheriff Roundtree, the cumulative effect of this evidence with the other (admittedly largely circumstantial) evidence relating to his involvement *could* meet the Eleventh Circuit's current standard. It is for this reason that the content of the redacted emails is of great importance to this case. In this regard, it is important to keep in mind that the very existence of these emails was not revealed by Defendants under after the close of discovery in this case, since Defendants failed to fulfill their obligation during the discovery period to provide a privilege log identifying what they had withheld from discovery, even though they were requested to do so well within the discovery period.

A key question is the extent to which the Sheriff was personally aware of the ongoing controversy between officers of the Richmond County Sheriff's Office (the "RCSO") and Plaintiff, or of the complaints made to various officers by Mr. Thomas Burnside. Notably, Sheriff Roundtree claims and has stated under oath that he had no knowledge whatsoever of this whole situation, or even of the existence of Plaintiff or any troubles at the Abortion Facility, before the filing of the present lawsuit.

These complaints of Mr. Burnside were so frequent, and the determination of RCSO officers to "shut down" Plaintiff's protests so strong, that during one particular period of indefinite length, officers of the RCSO were directed by their superiors to visit the Abortion Facility location every hour on the hour, even in the absence of a particular complaint, apparently to see if Plaintiff could be caught doing something wrong. In this regard, see the emails identified by Patrick Clayton, the Sheriff's Chief Deputy, in his deposition exhibits 2-7, as attached as Exhibit 2

(Document 68-2) to Plaintiff's original Objection to the part of the Magistrate Judge's ruling now at issue (Document 68) and in particular Exhibit 7. In this Exhibit 7, Mr. Burnside complains and Chief Deputy Clayton forwards this complaint to one of his subordinates, who in turn issues an order that "effective immediately [June 21, 2022] every hour we need to do an area check of this location during business hours. Make sure we go out over the radio to document in order to document that we are checking it. . . and remember they also are recording any incidents with law enforcement . . ."

Chief Deputy Clayton testified that he kept Sheriff Roundtree informed "about law enforcement problems that have come up in your division" "probably every day". Clayton Deposition, pp. 4-5. Yet at his deposition on June 30, 2023, Chief Deputy Clayton, while admitting the possibility, could not remember whether he had ever discussed Plaintiff or problems at the Abortion Facility with Sheriff Roundtree. *Id.,* pp. 49-50. And Sheriff Roundtree on the same day testified without qualification that he had never heard of problems at the Abortion Facility before the filing of the present lawsuit and had never discussed any such problems with Chief Deputy Clayton. Roundtree Deposition, p. 9. Copies of all this material were attached to Plaintiff's Renewed Motion as Composite Exhibit B. Together they surely show the great importance of any email received by Sheriff Roundtree that may bear on this situation. Plaintiff can think of no reason that the emails at issue would have been identified even in Defendants' tardy privilege log, unless they bear on this situation.

   *2. Deficiencies of Sheriff Roundtree's Affidavit*

Plaintiff discusses first the deficiency of the Sheriff's Affidavit with respect to persons who received the emails but who were not members of the "Command Staff", because it is in this regard that the Affidavit is most lacking. The Court's Order directs the Sheriff to provide sworn

information concerning "whether the six recipients of the forwarded email [persons not part of the "Command Staff"] have job duties concerning the noise ordinance such as enforcement duties." Order of February 9, 2024, Document 69, p. 6. These are the persons to whom the emails were immediately forwarded by Captain Scott Gay ("Court Services") and by Captain Glenn Rahn ("Standards and Training"). Plaintiff contests the "need to know" of five of these persons. As to three of them, the Sheriff's Affidavit says only that they "were certified officers who must be knowledgeable about all RCSO policies related to ordinances as they *could be* called to respond or assist on any calls." Affidavit, Document 70-1, paragraph 13. As to the other two, the Affidavit says only that they "were officers in my Internal Affairs Division and Public Information Office who must know all policies and procedures as they publicly speak for the RCSO and investigate complaints against officers." *Id.,* paragraph 14. The Affidavit also specifies that "all of my . . . certified officers would need to know the policies and procedures related to enforcement of the Augusta, Georgia noise ordinance as enforcement of laws and ordinances is within their job responsibilities." *Id.,* paragraph 12.

This elaboration, if it can be considered such, of the Sheriff's contention that *all* of his certified officers had a need to know what was in the emails he sent to the 20-odd members of his "Command Staff" amounts to a claim that he was entitled to share these emails with virtually the entire RCSO, without waiving the attorney-client privilege. The entire reason for the rule that improper distribution of an attorney-client privilege document, even within an organization, will waive the privilege is that reasonable confidentiality must be maintained. In his earlier briefs on this issue, Plaintiff has noted that the attorney-client privilege must be contained within proper bounds, since it interferes with the first principle of evidence, that is, the search for truth. Defendants contention in this particular respect is simply overbroad and is shown to be such,

8

beyond what could be inferred from the original Record on this issue, by the Sheriff's sweeping affidavit assertion in this respect.

The Sheriff's Affidavit is also deficient as to his "Command Staff". Plaintiff has not of course denied that some members of Sheriff Roundtree's "Command Staff" would have had a need, or at least a reason, to know the mysterious material contained in the subject emails. Plaintiff has argued the unlikelihood of the claim that all of the members had such a need. In its Order of February 9, the Court noted that Plaintiff's argument was "plausible but falls short of rendering the Magistrate Judge's interpretation clearly erroneous or contrary to law." Document 69, p. 5. Plaintiff contends that the Sheriff's subsequent Affidavit makes Plaintiff's argument more plausible. The Sheriff's Affidavit, although sometimes referring to "each" member of the "Command Staff", or to "all" such members, does not use these inclusive terms when discussing the most reasonable explanation of why "Command Staff members must be concerned about overall operations of the RCSO for many reasons." The Sheriff says that "Members of the Command Staff alternate being the on-call supervisor during night and weekend shifts during which they may have to respond to and supervise incidents related to any division of the RCSO." It frankly exceeds credibility that Ms. Brown ("Finance Director"), Ms. Mosquera ("Criminal Intelligence Director/Records Bureau Director") or Counselor Linda Doty ("Resiliency and Wellness Center") perform such duties as serving as night or weekend shift officer in charge of all "incidents related to any division of the RCSO". The Sheriff's Affidavit does not actually assert that they do, although it appears intended to suggest this. This apparent equivocation should militate against a finding that Defendants have carried their burden of proof as to lack of waiver.

*3. Conclusion*

The Court's Order of February 9 overruled Plaintiff's objection, based on the Record originally before the Magistrate Judge and upon which the Magistrate Judge originally reached his conclusion. Plaintiff's present objection argues that the deficiencies in the Sheriff's subsequent Affidavit justify revisiting this conclusion.

Here is *possibly* crucial evidence, which was withheld by Defendants during discovery, in violation of their obligation to provide a privilege log, and the redaction of which is now supported by an Affidavit making dubious statements which are not subject to cross examination and which do not in any case actually respond fully to the Court's direction in this regard. As to the question of whether the five (the need to know of the sixth having now been conceded by Plaintiff) officers to whom the emails were forwarded had a "need to know" of its contents, the Affidavit presents no actual evidence at all. As to whether *all* members of the "Command Staff" had such a need, including such persons as the chief financial officer of the Sheriff's Department and the supervisor of the "wellness and resiliency center", the Affidavit appears to be worded so as to suggest that this is the case without actually so stating. What the Affidavit does *not* contain shows more clearly than did the Record before its filing that the Magistrate Judge's finding is clearly erroneous as a matter of law and fact.

Plaintiff submits that in light of the Sheriff's Affidavit the Magistrate Judge's conclusion is clearly erroneous as a matter of law and fact and that at least an *in camera* inspection of the redacted material is necessary in the interest of justice.

                                                TURNER PADGET GRAHAM & LANEY, P.A.

                                                /s/ Charles C. Stebbins, III
                                                Charles C. Stebbins, III

Georgia Bar No.: 677350
Robert P. Mangum
Ga. Bar No.: 268222
PO Box 1495
Augusta, GA. 30903
(706) 722-7543
cstebbinsiii@turnerpadget.com
rmangum@turnerpadget.com

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

COMES NOW, the undersigned attorney for Steven Smith, Plaintiff in the above-captioned case, and certifies that on March 25, 2024 he electronically filed the foregoing Objection with the Clerk's electronic filing system, which will automatically provide service to all counsel of record as follows:

>Frails & Wilson, LLC
>Tameka Haynes
>thaynes@frailswilson.com
>Randy Frails
>rfrails@frailswilson.com

/s/ Charles C. Stebbins, III
Charles C. Stebbins, III