**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

| | | |
|---|---|---|
| STEVEN SMITH,<br><br>Plaintiff,<br><br>v.<br><br>AUGUSTA-RICHMOND COUNTY, GEORGIA, et al.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CV 122-149 |

**O R D E R**

On April 21, 2026, the Court held an evidentiary hearing (the "April 21, 2026 Hearing") on Plaintiff's request for permanent and interlocutory relief and took the matter under advisement. (Doc. 104.) For the following reasons, the Court finds that Section 3-6-1 ("Section 1") of Defendant Augusta-Richmond County's ("Augusta") noise ordinance (the "Ordinance") is facially unconstitutional. As a result, the Court finds Section 3-6-2 ("Section 2") of the Ordinance is unenforceable, so the Court need not grant injunctive relief.

## I. BACKGROUND

The facts of this case were detailed in the Court's March 25, 2024 and March 10, 2026 Orders. (Doc. 74, at 1-6; Doc. 100, at 2-3.) Sections 1 and 2 of the Ordinance are the subject of Count

One of Plaintiff's complaint, which seeks declaratory and injunctive relief against Augusta. (Doc. 1, at 18-24.) The Court held the April 21, 2026 Hearing on the relief sought in Count One and requested the Parties file post-hearing supplemental briefing. (Doc. 104, at 1.) On May 11, 2026, Plaintiff and Defendant Augusta filed their post-hearing briefs. (Docs. 107, 108.) On May 26, 2026, both Parties responded. (Docs. 111, 112.) Lastly, Plaintiff replied to Defendant Augusta's response and filed Exhibits 1-14. (Docs. 113, 114, 115.) The issues are now ripe for the Court's consideration.

## II. DISCUSSION

The Court first considers whether Plaintiff has Article III standing to bring constitutional challenges to the Ordinance before analyzing whether either Section 1 or Section 2 violates the United States Constitution or if injunctive relief is appropriate.

### A. Standing

Plaintiff argues he has Article III standing to challenge Sections 1 and 2 of the Ordinance because "[h]e has been injured by being charged with Section 1, and he has been threatened with being charged under Sections 1 and 2," so he can seek an injunction against their enforcement. (Doc. 107, at 10.) Further, Plaintiff has a "credible fear" that the sections will be enforced against

him, which constitutes an injury in fact when enforcement would punish free speech. (Doc. 111, at 6.) Plaintiff also argues this injury is redressable by the Court and a causative link is present. (Id.)

Defendant Augusta argues Plaintiff lacks standing because he "fails to establish any injury that is fairly traceable to [Defendant] Augusta's actions or that could be redressed by enjoining [Defendant] Augusta from enforcing the noise ordinance." (Doc. 108, at 6.) As a result, Defendant Augusta argues there is no case or controversy, and standing is not established. (Id.)

Article III of the United States Constitution limits the power of federal courts to adjudicating actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. "If there is no case or controversy — meaning there is no actual or imminent, legally cognizable dispute between the parties — the case is not justiciable and the Court must dismiss." Magpul Indus., Corp. v. Blue Force Gear, Inc., No. 4:14-cv-277, 2018 WL 11413885, at *3 (S.D. Ga. Nov. 16, 2018) (quotations omitted) (citing Muskrat v. United States, 219 U.S. 346, 356 (1911); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 & n.1 (1992)).

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (alteration adopted and citations omitted); see also

Austin & Laurato, P.A. v. United States, 539 F. App'x 957, 960 (11th Cir. 2013) ("An essential prerequisite to a federal court's power to entertain a suit is an Article III case or controversy."). To establish constitutional standing under Article III, a plaintiff must show: (1) plaintiff "suffered an injury in fact"; (2) there is "a causal connection between the injury and the conduct complained of"; and (3) "that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (quotations and citations omitted). An injury in fact is "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and quotations omitted). For the causal connection, it must be "fairly traceable to the challenged action of the defendant." Id. (citation omitted and alterations adopted). Lastly, on redressability, "it must be likely, as opposed to merely speculative," that a favorable decision will redress the injury. Id. at 561 (quotations and citation omitted).

The Court finds all three elements required for Article III standing are satisfied. First, Plaintiff has suffered an injury in fact because Richmond County Sheriff's Office ("RCSO") deputies have threatened to cite Plaintiff under Sections 1 and 2 several times such that there is a credible threat of enforcement. (Doc. 107, at 10.) Plaintiff states he was injured when he was charged with Section 1 and threatened with being charged under Sections 1

and 2. (Id.) Defendant Augusta argues Plaintiff has not shown he has suffered an injury because although threats of enforcement can satisfy the injury requirement, Plaintiff has not shown that he plans to engage in conduct barred by the Ordinance. (Doc. 108, at 3.) Generally, "[a]n injury in fact does not arise only when a defendant causes tangible harm to a plaintiff . . . [i]t can also arise when a defendant burdens a plaintiff's constitutional rights." First Choice Women's Res. Ctrs., Inc. v. Davenport, 146 S.Ct. 1114, 1125 (2026) (citation omitted). Additionally, "a party need not always wait for the government to take coercive action against it before filing suit," but rather, "a litigant may bring a pre-enforcement suit seeking prospective relief . . . so long as it faces a credible threat of enforcement." Id. at 1122 (citation omitted). This Supreme Court holding applies here. Plaintiff has shown that officers routinely threatened citations and prosecution under the Ordinance while interacting with him. (Doc. 106, at 40-45, 50-51; Doc. 115, at 31.) It is clear that Plaintiff has experienced a credible threat of enforcement while exercising his First Amendment right to free speech. Given the Supreme Court's holding in Davenport, this credible threat qualifies as an injury in fact.

The Supreme Court has also recognized that "a party suffering an objectively reasonable chill" to its First Amendment rights "has an injury in fact sufficient to give rise to Article III

standing." Davenport, 146 S.Ct. at 1126 (quotations omitted). The Court finds that a party facing repeated threats of citations and prosecution while exercising its First Amendment rights, such as Plaintiff, is likely to experience "an objectively reasonable chill" to those rights. Id. Further, the officers' threats of enforcement objectively chill speech because those threats would cause a reasonable person to fear expressing their views just like Plaintiff. Speech First, Inc. v. Cartwright, 32 F.4th 1110, 1121 (11th Cir. 2022). Based on the above, Plaintiff has shown an injury in fact, and the first element is met.

Second, Plaintiff shows there is a causal connection between his injury and the conduct he complains about. Defendant Augusta argues Plaintiff's injury is not fairly traceable to any of its actions because "Plaintiff has not provided any connection between [the] alleged injury caused by RCSO deputies and any misconduct by [Defendant] Augusta." (Doc. 108, at 4.) Plaintiff argues the causation required for standing is more relaxed than the proximate cause standard. (Doc. 111, at 6 (citation omitted).)

The Court finds Plaintiff's injury is fairly traceable to the challenged action of Defendant Augusta because Plaintiff is challenging the constitutionality, and thus the enforcement ability, of Defendant Augusta's Ordinance. Lujan, 504 U.S. at 560; (Doc. 107 at 10.) Plaintiff's injury is the threat of enforcement of the challenged Ordinance portions, Sections 1 and

2, which is directly related to the Ordinance itself. If those sections no longer exist, Plaintiff suffers no injury because there is no potential enforcement of those sections. Because Plaintiff disputes the Ordinance's constitutionality, which in turn affects its enforceability, Plaintiff shows his injury is fairly traceable to the challenged conduct. Lujan, 504 U.S. at 560.

Third, the Court finds a favorable decision would redress Plaintiff's injury. Plaintiff seeks a declaratory judgment that both sections are unconstitutional, as well as an injunction enjoining enforcement of both sections. It has been established that Plaintiff's injury is the credible threat of enforcement and resultant chilling of his First Amendment speech. As such, a declaratory judgment or injunction in Plaintiff's favor would prevent the enforcement of, and consequently, threat of prosecution under, Sections 1 and 2. Plaintiff states that he "is not suffering from the isolated mistake of an individual officer, but from the present phase of a long-continued joint effort by the City and the Sheriff's Office to silence him by intimidation." (Doc. 111, at 7.) Given this, a ruling for Plaintiff would likely redress his injury, rising above the speculative level to satisfy the third element. Lujan, 504 U.S. at 561.

Based on the above, the Court finds Plaintiff has Article III standing to challenge the constitutionality of Sections 1 and 2 and seek an injunction against their enforcement.

**B. Constitutionality of Sections 1 and 2 of the Ordinance**

The Court considers whether Section 1 is constitutional on its face or as applied to Plaintiff's speech before turning to Section 2.

1. Section 1

Plaintiff argues Section 1 of the Ordinance is facially unconstitutional because it is too vague and argues that "federal constitutional law is quite clear that a prohibition of any noise, at any time, which is annoying or disturbing to any person, is unmistakably unconstitutional." (Doc. 107, at 10-11.) Plaintiff also references Supreme Court and Eleventh Circuit caselaw where similarly worded ordinances were upheld only because they were limited to certain contexts. (Id. at 12-13 (citing Grayned v. City of Rockford, 408 U.S. 104, 108-14 (1972); Pine v. City of W. Palm Beach, 762 F.3d 1262, 1275-76 (11th Cir. 2014)).) Defendant Augusta argues Section 1 is constitutional because subsection (a) does not contain a prohibition, but explains the purpose of the Ordinance, while Section 2 lists the prohibited loud noises. (Doc. 108, at 13; Doc. 112, at 3.) Further, Defendant Augusta argues that Section 1 is not vague because courts have upheld ordinances with similar language to both subsections (a) and (b) of Section 1. (Doc. 108, at 13-14 (citing Grayned, 408 U.S. at 109-14; Kovacs v. Cooper, 336 U.S. 77, 88-89 (1949); Henderson v. McMurray, 987 F.3d 997, 1004 (11th Cir. 2021)).)

The Declaratory Judgment Act provides that

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). "For a controversy to exist, the facts alleged, under all the circumstances, must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Bitco Gen. Ins. v. Kelluem, No. 1:16-cv-168, 2017 WL 5244803, at *2 (S.D. Ga. May 4, 2017) (internal quotations omitted) (quoting Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 408, 414 (11th Cir. 1995)). The Court must remain cognizant, however, that "the purpose of declaratory judgment actions . . . is to resolve outstanding controversies without forcing a putative defendant to wait to see if it will be subjected to suit." Sherwin-Williams Co. v. Holmes Cnty., 343 F.3d 383, 398 n.8 (5th Cir. 2003). Accordingly, even if the maturation of the controversy depends on future contingencies, courts still may entertain declaratory judgment actions. See GTE Directories Publ'g Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1569 (11th Cir. 1995).

A plaintiff can challenge the constitutionality of a statute or ordinance by asserting a facial challenge, an as-applied

challenge, or both. See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009). A facial challenge asserts that a particular ordinance "always operates unconstitutionally," while an "as-applied challenge, by contrast, addresses whether 'a statute is unconstitutional on the facts of a particular case or to a particular party.'" Id. (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)). A facial challenge "seeks to invalidate a statute or regulation itself." United States v. Pugh, 90 F.4th 1318, 1325 (11th Cir. 2024) (citation omitted).

For an ordinance to be void for vagueness, it must "fail[ ] to give the ordinary citizen adequate notice of what is forbidden and what is permitted." Horton v. City of St. Augustine, 272 F.3d 1318, 1330 (11th Cir. 2001) (quoting City of Chicago v. Morales, 527 U.S. 41, 60 (1999)). An ordinance is not vague when it "uses ordinary terms that have common usage and understanding." Id. "A vaguely worded [ordinance] can trap innocent parties by failing to give notice of what is prohibited, and allow enforcement officials to defer to their own standards of what constitutes a violation." DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1270-71 (11th Cir. 2007) (citing Grayned, 408 U.S. at 108-09). However, "[w]hen an ordinance restricts or penalizes speech, . . . it can also exert a chilling effect that discourages individuals who are not present before the Court from exercising their First Amendment rights for fear of arbitrary enforcement." Id. at 1271 (citing

Grayned, 408 U.S. at 109). In these cases, "courts may consider evidence of discriminatory or arbitrary enforcement that would be likely to chill expression by others." Id. (citing Konikov v. Orange Cnty., 410 F.3d 1317, 1330 (11th Cir. 2005)).

The Court finds Section 1 of the Ordinance is vague. To prove vagueness, a plaintiff "must either show that the ordinance fails to give fair warning of what constitutes a wrongdoing or that the statute lacks objective enforcement standards." Id. First, Section 1 fails to provide warning of what conduct is prohibited. Section 1 provides:

> (a) Purpose. It shall be unlawful for any person to make, continue or cause to be made or continued or permit to be made, continued or caused any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County.
> (b) Plainly audible as used in this Chapter means any noise or sound which can be heard by the auditory senses of a person standing at a distance no less than the distances set forth below from the sound. Words or phrases need not be discernable for music and other noises to be prohibited. Bass reverberations are included in the prohibited noises.

(Doc. 114, at 6.) Plaintiff cites Grayned and Pine to support Section 1's vagueness. (Doc. 107, at 12 (citing 408 U.S. at 108-14; 762 F.3d at 1275-76).) In Grayned, the Supreme Court upheld a noise ordinance prohibiting "any noise or diversion which disturbs or tends to disturb the peace or good order *of [a] school session or class thereof*," and noted, "we can never expect

mathematical certainty from our language. The words of the . . . ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but we think it is clear what the ordinance as a whole prohibits." 408 U.S. at 108-110 (emphasis added, footnote and citation omitted). Grayned specifies that the ordinance "forbids this willful activity at fixed times — when school is in session — and at a sufficiently fixed place — adjacent to the school." Id. at 111 (quotations omitted). Further, the Supreme Court relied on a narrowing construction by the Supreme Court of Illinois, which found that a similar ordinance's language pertaining to "a diversion tending to disturb the peace," applied "only where there was imminent threat of violence." Id. (quotations and citation omitted). Given the above, the Supreme Court concluded, "[w]e do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school." Id. at 112.

Contrary to Grayned, Section 1 does not contain any particular context such that it "gives fair notice to those to whom it is directed." Id. (alteration adopted, quotations and citation omitted). Unlike the noise ordinance in Grayned, Section 1 establishes a prohibition on loud, unnecessary or unusual noises without specifying a set location or context in which the

prohibition applies. (Doc. 114, at 6.) Neither Party identifies a narrowing construction applicable to Section 1's language: "annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in Augusta-Richmond County." Id. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned, 408 U.S. at 108. The Court finds Section 1's prohibitions are vague and unclear.

Similarly, in Pine, the Eleventh Circuit upheld a noise ordinance restricting "loud and raucous noise, or any noise which unreasonably disturbs, injures, or endangers the comfort, repose, health, peace, or safety" of others inside a health care facility quiet zone, as defined in the ordinance. 762 F.3d at 1272. Unlike Section 1, the Pine ordinance is specific as to the context where the prohibitions apply. The Supreme Court has also upheld an ordinance with abstract terms such as "loud" and "raucous" because those words have "acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." Kovacs, 336 U.S. at 79. However, the Court finds Section 1's language describing noise that is "unusual" or generally "annoys" and "disturbs" others is subjective enough to fail to provide clear enforcement standards. (Doc. 114, at 6.) While Section 1(b) outlines that plainly audible noises are defined as those heard "at a distance no less than the distances set forth below from the

sound," it is unclear what noises are particularly unusual, annoying or disturbing to "others in Augusta-Richmond County." Id. What may be annoying and disturbing to one may be normal or even enjoyed by another. "Loud" can be quantified by the enumerated distances in Section 2 and, in theory, enforced objectively if the responding enforcer measures the distance the noise can be heard from while on the scene of each noise complaint. However, the water is muddied when the enforcer is tasked with determining what kind of noise is forbidden. Because Section 1 implicates First Amendment rights, the Court "may consider the *risk* of arbitrary enforcement" and the potential that the ordinance "will chill expression." Konikov, 410 F.3d, at 1330 (citing Grayned, 408 U.S. at 109 & n.5). The Court finds there is a risk of arbitrary enforcement of Section 1 based on differing opinions of what constitutes annoying or disturbing noise, both generally and as it pertains to noise involving First Amendment expression.

To be found unconstitutionally vague, an ordinance need meet only one of two metrics: it either (1) does not give fair notice of what constitutes a violation, or (2) creates a risk of arbitrary enforcement because it lacks enforcement standards. Id. at 1329-31. Section 1 meets both, so it is vague and facially unconstitutional. Because Section 1 is unconstitutional on its face, the Court does not analyze whether Section 1 is unconstitutional as applied to Plaintiff's speech.

2. Section 2

Since the Court has found Section 1 is facially unconstitutional under the vagueness doctrine, it concludes Section 2 is invalid because it cannot stand independently of Section 1. As discussed above, Section 1 sets a prohibition on "any loud, unnecessary or unusual noise," and details terminology such as "[p]lainly audible" and "prohibited loud noises." (Doc. 114, at 6.) Section 2 is entitled, "Sec. 3-6-2. Prohibited loud noises enumerated," and elaborates on what types of noises from Section 1 cannot be heard at various distances depending on time of day and day of the week. (Id. at 6-11.) Section 2 hinges on Section 1 because it elaborates on the broad prohibition stated in Section 1. In finding Section 1 unconstitutional, Section 2 becomes unenforceable. Therefore, the Court need not determine whether Section 2 is unconstitutional on its face or as applied to Plaintiff's First Amendment speech.

**C. Injunctive Relief**

The Court finds that Section 1 is facially unconstitutional and unenforceable, thereby making Section 2 invalid, so Plaintiff's request for injunctive relief as to the enforcement of Sections 1 and 2 is now moot. It is unnecessary for the Court to analyze the elements required to grant an injunction. Because Section 1 must be repealed and Section 2 cannot stand independently

of Section 1, there remains no potential enforcement action to enjoin, and Plaintiff's request for injunctive relief is **DENIED.**

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's request for declaratory relief as to Section 1 of the Ordinance is **GRANTED.** As a result, the Court finds Section 1 is facially unconstitutional and Section 2 is unenforceable such that Plaintiff's request for injunctive relief is **DENIED.** The case **SHALL** proceed to trial on all remaining claims in due course.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of August, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA